IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LIBERTARIAN PARTY OF TENNESSEE, )
ANTHONY WALL, GREEN PARTY OF )
TENNESSEE, KATHLEEN A. CULVER, )
CONSTITUTION PARTY OF )
TENNESSEE and JOAN CASTLE, )
           )
       Plaintiffs, )
           )
v.                        )      Case No. 3:08-0063
           )      Judge Haynes
MARK GOINS, Coordinator of )
Elections for the State of Tennessee, and )
TRE HARGETT, Secretary of State for the )
State of Tennessee, )
           )
       Defendants. )

# ATTACHMENT

# EXHIBIT E

# LIBERTARIAN PARTY OF TENNESSEE'S RESPONSE TO DEFENDANTS' INTERROGATORIES

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LIBERTARIAN PARTY OF TENNESSEE, )
ANTHONY WALL, GREEN PARTY OF )
TENNESSEE, KATHLEEN A. CULVER, )
CONSTITUTION PARTY OF TENNESSEE, )
and JOAN CASTLE, )
)
     ....Plaintiffs, )  Case No. 3: 08-0063
)
)  Judge Haynes
  v. )
)
BROOK THOMPSON, Coordinator of )
Elections for the State of Tennessee; and )
RILEY DARNELL, Secretary of State )
for the State of Tennessee, )
     ....Defendants. )

## <u>PLAINTIFF LIBERTARIAN PARTY OF TENNESSEE'S RESPONSE TO</u> <u>DEFENDANTS' FIRST SET OF INTERROGATORIES AND</u> <u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>

COMES now the Plaintiff, Libertarian Party of Tennessee, by and through its counsel of record, and by a duly authorized officer or agent, in accordance with Fed.R.Civ.P. 33 and 34, offers its response to Defendants' First Set of Interrogatories and Request for Production of Documents, as follows:

1. Please identify any and all persons who have assisted you in providing answers to these discovery requests or provided you with any portion of the information and/or documents provided in response to these discovery requests.

<u>ANSWER</u>: James C. Linger, Attorney at Law, 1710 S. Boston Ave., Tulsa, OK 74119-4810
(918) 585-2797

Richard Winger, P.O. Box 470296, San Francisco, CA 94147
(415) 922-9779

Anthony E. Wall, 354 Summerville Road, Kingsport, TN 37663
(423) 534-8848



2. Please identify all persons known or believed by you to have knowledge of the

subject matter of the Complaint in this matter, and provide a summary of the substance of that knowledge.

ANSWER:

Kathleen A. Culver, 668 Hurricane Road, Linden, TN 37096
(931) 589-6513
A co-plaintiff in the lawsuit. Ms. Culver is an alternative delegate for the Green Party of Tennessee and is knowledgeable in the history, organization, structures, and ballot access efforts of the Green Party of Tennessee.

Anthony Wall, 354 Summerville Road, Kingsport, TN 37663
(423) 534-8848
A co-plaintiff in the lawsuit. Mr. Wall is the Chairman of the Libertarian Party of Tennessee and is knowledgeable in the history, organization, structure, and ballot access efforts of the Libertarian Party of Tennessee.

Gary Sinewski, Atty., 250 West 57th Street, Suite 2017, New York, NY 10107
(212) 581-1516
First attorney to work on the case.

Joan Castle, 2586 Hocksett Cove, Germantown, TN 38139
(901) 624-3884
Mrs. Castle is the Chair of the Constitution Party of Tennessee and is knowledgeable in the history, organization, structure, and ballot access efforts of the Constitution Party of Tennessee.

Darrell L. Castle, Atty. 3100 Walnut Grove Rd., #610, Memphis, TN 38111
(901) 327-2100
Prior State Chairman of the Constitution Party of Tennessee and first member. Mr. Castle is currently the nominee for Vice President of the United States of the Constitution Party.

Richard Winger, P.O. Box 470296, 3201 Baker Street, San Francisco, CA 94147-0296, (415) 922-9779
Mr. Winger has worked with third parties and specifically with the national Constitution Party regarding problematic issues in getting ballot access. Mr. Winger is also editor of the Ballot Access News, the designated election law expert for the plaintiffs in the instant case, has been recognized as an expert witness in numerous federal and state election law cases, is familiar with the history of election law in the United States and the State of Tennessee, is knowledgeable in the history, organization, structure, and ballot access efforts of

2

the Libertarian Party, Green Party, Constitution Party, and other political parties in the United States and the State of Tennessee, and will testify as an expert on the affects of Tennessee's current ballot access and retention laws for new and established political parties. An expert report and curricula vitae for Mr. Winger has previously been provided to counsel for the Defendants.

Joel Whitenton, attorney, in the Tennessee State Division of Elections.

3.     Please identify every witness, expert or otherwise, you plan to call or rely upon at

any hearing or trial in this matter. Include in your response the relevant facts,

opinions or other information on which the individual is expected to testify. Also,

include the identification of any document(s) on which the individual is expected to

review and rely upon in giving his or her testimony.

ANSWER:

Kathleen A. Culver, 668 Hurricane Road, Linden, TN 37096
(931) 589-6513
A co-plaintiff in the lawsuit. Ms. Culver is an alternative delegate for the Green Party of Tennessee and is knowledgeable in the history, organization, structures, and ballot access efforts of the Green Party of Tennessee.

Anthony Wall, 354 Summerville Road, Kingsport, TN 37663
(423) 534-8848
A co-plaintiff in the lawsuit. Mr. Wall is the Chairman of the Libertarian Party of Tennessee and is knowledgeable in the history, organization, structure, and ballot access efforts of the Libertarian Party of Tennessee.

Joan Castle, 2586 Hocksett Cove, Germantown, TN 38139
(901) 624-3884
Mrs. Castle is the Chair of the Constitution Party of Tennessee and is knowledgeable in the history, organization, structure, and ballot access efforts of the Constitution Party of Tennessee.

Richard Winger, P.O. Box 470296, 3201 Baker Street, San Francisco, CA 94147-0296, (415) 922-9779
Mr. Winger has worked with third parties and specifically with the national Constitution Party regarding problematic issues in getting ballot access. Mr. Winger is also editor of the Ballot Access News, the designated election law expert for the plaintiffs in the instant case, has been recognized as an expert

witness in numerous federal and state election law cases, is familiar with the history of election law in the United States and the State of Tennessee, is knowledgeable in the history, organization, structure, and ballot access efforts of the Libertarian Party, Green Party, Constitution Party, and other political parties in the United States and the State of Tennessee, and will testify as an expert on the affects of Tennessee's current ballot access and retention laws for new and established political parties. An expert report and curricula vitae for Mr. Winger has previously been provided to counsel for the Defendants.

Joel Whitenton, attorney, in the Tennessee State Division of Elections.

4.    Please identify with specificity every state where the Libertarian Party has been

recognized as a statewide political party at any time during the past twenty years

and all the requirements the Libertarian Party had to meet in each state to obtain

such recognition.

ANSWER:

Alabama: 1988, the party did a petition signed by 1% of the last gubernatorial vote; 1992, same; 1996, same; 2000, a petition of 3% of the last gubernatorial vote; 2002, on automatically because one statewide nominee had polled over 20% in 2000.

Alaska: 1988, on automatically because had polled 3% for president in 1984; 1992, a petition of 1% of the last presidential vote; 1996, same; 1998, petition of 1% of last gub. vote; 2000, petition of 1% of last pres. vote; 2002 through present, on by having registration greater than 3% of last gubernatorial vote.

Arizona: 1988, submitted a petition of 2% of last vote cast; 1992, petition of 1.33% of last vote cast; 1994 through present, on by having registration of 2/3rds of 1% of state registration total.

Arkansas: 1988, on just by request (presidential status only); 1992 same; 1996 on for president only by a petition of 1,000 signatures; same for 2000; same for 2004.

California: on continuously 1988 to the present by having polled 2% for one statewide race in the last gubernatorial election year, and also always keeping the party's registration total above one-fifteenth of 1%.

4

Colorado: 1988 by petition of 5,000 signatures; 1990 by petition of 1,000 signatures; 1992 by petition of 5,000 signatures; 1994 by petition of 1,000 signatures; 1996 same; 1998 to present, on automatically because of having 1,000 registered members.

Connecticut: 1988 by petition of 1% of last pres. vote; 1992 same; 1996 by petition of 7,500 signatures; 1998 same; 2000 same; 2002 by having polled over 1% for statewide office in 1998 (only applies to some statewide offices, not all of them); 2004 by 7,500 signatures; 2006 by having polled over 1% for statewide office in 2002 (only applies to some statewide offices, not all of them).

Delaware: 1988 to the present continuously because of having registration membership of one-twentieth of 1% of statewide total.

Florida: 1988 by petition of 1% of registered voters (only applies to president); 1992 same; 1996 same; 2000 to the present continuously, on for all office by submitting list of party officers to secretary of state.

Georgia: 1988 by petition of 1% of registered voters; 1990 to present continuously by having polled 1% of the vote for any statewide office at the last election (however, this status only applies to the statewide offices, not district offices).

Hawaii: 1988 through 1996, on by virtue of also having been on 1982 through 1986; 1998 by petition of 1% of registered voters; 2000 by petition of one-tenth of 1% of registered voters; 2002 same; on continuously 2004 to present because had been on 1998 through 2002.

Idaho: 1988 on by petition of 2% of last presidential vote; 1990 to present, on continuously because had run at least candidates in previous election.

Illinois: 1988 on by petition of 25,000 signatures; 1992 same; 1994 same; 1996 on because had polled 5% for a statewide office in 1994 (status only includes statewide offices, not district offices); 2000 by petition of 25,000 signatures; same in 2002; same in 2004.

Indiana: 1992 on by petition of 2% of last vote for Secretary of State; 1994 same; 1996 to present, on continuously because had polled 2% for Secretary of State at previous election.

Iowa: 1988, on by petition of 1,000 signatures; 1992, same; 1994, on by petition of 1,500 signatures; 1996, same; 2000, same; 2002, same; 2004, same; 2006, same.

Kansas: 1992, on by petition of 2% of last gub. vote; 1994 through present, on continuously by having polled 1% for any statewide race at previous election.

Kentucky: 1988, on by petition of 5,000 signatures; 1992, same; 1996, same; 2000, same; 2004, same.

Louisiana: 1988, on for president only by paying $500; 1992, same; 1996, same; 2000, same; 2004, same; 2006 to present, on continuously because have 1,000 registrations.

Maine: 1988, by petition of 4,000 signatures; in 1992, on automatically because an independent gubernatorial candidate in 1990 had linked his vote of 5% to the party; 1996, by petition of 4,000 signatures; 2000 same; 2004 same.

Maryland: 1988, by petition of 10,000 signatures; same in 1992; same in 1996; same in 2000; in 2002, by petition of 1% of the registered voters; in 2004, by 10,000 signatures.

Massachusetts: 1988, by petition of 2% of the last gubernatorial vote; in 1992, by 10,000 signatures; in 1994, same; in 1996, on automatically because had polled over 3% for a statewide office in 1994; in 1998 by 10,000 signatures; in 2000, 2002, 2004 on automatically because had polled 3% for a statewide race in previous election.

Michigan: 1988, by petition of 1% of last gub. vote; 1990 on automatically because had polled over 1% of winner's vote in previous election; same in 1992; 1994, by petition of 1% of last gub. vote; 1996, on automatically because of meeting the vote test in 1994; 1998, same; 2000, same; 2002, same; 2004, same, 2006, same.

Minnesota: 1988 by petition of 2,000 signatures; same 1992; same 1994; same 1996; same 1998; same 2000; same 2004.

Mississippi: on continuously 1988 to present, by submitting a list of party officers to Secretary of State.

Missouri: 1988 by petition of 1% of last gub. vote; 1992 same; 1994 by petition of 10,000 signatures; on since continuously because of polling 2% of the vote for a statewide race at either of the last two elections.

Montana: 1988 by petition of 5% of winner's vote for Governor; on continuously 1990 thru present by polling 5% of the winning candidate's vote for at least one statewide nominee at either of the last two elections, ever since.

Nebraska: 1988 by petition of 1% of last gub. vote; 1992 same; 1994 same; on automatically in 1996 because polled 5% for a statewide race in previous year; 1998 by petition of 1% of last gub. vote; on automatically in 2000 by polling 5% for a statewide office in previous election; 2002 by petition of 1% of last gub. vote; 2004 same.

Nevada: on continuously 1988 through present by meeting the vote test in previous election, which was 3% until 1993, and has been 1% since then.

6

New Hampshire:  1988 by petition of 3,000 names; 1990 same; on automatically 1992-1996 by polling 3% for Governor in previous election; 1998 by petition of 3,000 names; 2000 by petition of 3% of last gub. vote; 2002 by 3,000 names.

New Jersey:  on in all statewide elections 1988 thru the present by, in each year, petition of 800 names.

New Mexico:  on 1988 automatically due to having been ballot-qualified previously; same in 1992; 1996 by petition of one-half of 1% of last vote cast; 1998 by petition of 1% of last vote cast; 2000 on automatically based on being on in previous election; 2004 by petition of one-half of 1%.

New York:  1988 by petition of 20,000 signatures; 1990 same; 1992 same; 1994 petition of 15,000 signatures; same for 1996, 1998, 2000, 2002, 2004, 2006.

North Carolina:  1992 by petition of 2% of last gub. vote; 1996 same; 1998 same; on automatically in 2000 because law says party that petitions in mid-term year is also on for next presidential year; 2002 by petition of 2% of last gub. vote; 2004 automatic.

North Dakota:  1988 by petition of 7,000 signatures; 1996 by petition of 7,000 signatures; 2000 by petition of 4,000 signatures; 2004 by petition of 4,000 signatures.

Ohio:  2000 by petition of 1% of last vote cast.

Oklahoma:  1988 by petition of 3% of last presidential vote (president only); 1992 same; 1996 by petition of 5% of last vote cast; 2000 same.

Oregon:  1988 by petition of 5% of last gub. vote; on automatically ever since due to meeting the vote test, which was 5% in 1988 and 1% starting in 1989.

Pennsylvania:  1988 by petition of 2% of winning candidate for Judge in previous odd year; same in 1992, 1994, 1996, 1998, 2000, 2002, 2004.

Rhode Island:  1988 by petition of 1,000 signatures; same in 1992, 1996, 2000, 2004.

South Carolina:  on continuously 1988 to present, due to meeting requirement to run at least one candidate every 4 years.

South Dakota:  1992 by petition of 2.5% of last gub. vote; 1994 on automatically due to law that says if party petitions in presidential year it is also automatically on in following mid-term year; 1996 and 1998 on automatically because polled 2.5% for Governor in 1994; 2000 by petition of 2.5% of last gub. vote; 2002 on automatically; 2004 by petition of 2.5% of last gub. vote; 2006 on automatically.

Case 3:08-cv-00063     Document 21-5     Filed 01/15/10     Page 8 of 21 PageID #: 126

Texas: on continuously 1988 through 2002 because of polling 5% for one statewide office; 2004 on by petition of 1% of last gubernatorial vote; on continuously since then for meeting the vote test.

Utah: 1988 by petition of 500 signatures; 1990 same; 1992 automatically because there had been no statewide race in 1990; on automatically 1994 for polling over 2% for a statewide race in previous election; by petition of 500 signatures in 1996; on automatically in 1998 due to polling over 2% in previous election; 2000 by petition of 2,000 signatures; 2002 automatically by polling over 2% in previous election; 2004 automatically because there had been no statewide election in 2002; 2006 automatically by polling 2% for statewide race in previous election.

Vermont: on continuously 1988 to present by having town committees in at least 10 towns.

Virginia: 1988 by petition of one-half of 1% of registered voters; 1992 same; 1996 same; 2000 by petition of 10,000 names; 2001 same; 2004 same.

Washington: 1988 by holding convention with attendance of one-hundredth of 1% of last pres. vote; 1992 by holding convention with attendance of 200 voters; 1996 same; 2000 same; 2002 and 2004 on automatically by having polled 5% for statewide office in 2000; 2006 by petition of 1,000 names.

West Virginia: 1992 by petition of 1% of last pres. vote; 1996 same; 1998 and 2000 automatically due to having polled 1% for Governor in 1996; 2004 by petition of 2% of last pres. vote.

Wisconsin: on continuously 1988 to present by polling 1% for statewide race in midterm years.

Wyoming: 1988 by petition of 8,000 names; 1992 same; 1994 same; on continuously since then due to meeting vote test, which was 3% until 1998 when it was changed to 2%.

5.     Please identify with specificity all instances where the Libertarian Party has had a candidate on the ballot at either the August or November election in Tennessee for the past forty years, including the name of the candidate, the office sought and the percentage of votes received by each such candidate.

ANSWER:

1976: Roger MacBride, president, .09%
US House 1, Mary Joyner, .28%

8

US House 3, Wendell Hill, .13%
US House 4, William McGlamery, 5.97%
US House 5, Roger Bissell, 7.56%
Constitutional Convention Del. 52, Phil Cardin, 13.24% Constitutional Convention Del. 93, Richard Bacon, 17.00%
1978: State Rep 93, Richard Bacon 10.14%
1979: Davidson Co. Metro Council-at-large, Mary Alice Chapuis, 6.18% Memphis Council-at-large, place 3, Perry Boling, 4.67%
1980: Ed Clark, president, .44%
State Rep 83, Shirley Lamar, 17.06%
State Rep 93, Perry Boling, 4.52%
1982: State Rep 59, Dennis Mann, 5.06%
1984: David Bergland, president, .18%
State Sen 6, Michael McKinney, 5.91%
State Sen 10, Wendell Hill, 1.64%
State Rep 14, Richard Roland, 1.03%
1988: Ron Paul, president, .12%
US House 2, unexpired term, Charles West, 1.28%
1992: Andre Marrou, president, .09%
US House 6, H. Scott Benson, 2.80%
US House 8, David L. Ward, 4.24%
1994: US House 5, Lloyd Botway, .61%
1996: Harry Browne, president, .27%
US Senate, Greg Samples, .23%
US House 1, Paul Schmidt, .20%
US House 2, Chris Dimit, .61%
US House 3, William Cole, .50%
US House 4, Preston Spaulding, .32%
US House 5, Michael Childers, 3.78%
US House 6, Jim Coffer, 4.01%
US House 7, Steve Romer, 1.32%
US House 8, Donna Malone, 2.62%
US House 9, Greg Voebringer, .17%
1998: US House 2, Greg Samples, 4.23%
2000: Harry Browne, president, .21%
US House 2, Kevin Rowland, 10.65%
US House 3, Trudy Austin, 1.48%
US House 5, David Carew, 3.04%
US House 6, Jim Coffer, 1.73%
US House 7, Dennis Sollee, 1.20%
State Sen 6, Wade Boswell, 11.30%
State Sen 18, Dave C. Myers, 1.58%
State Rep 10, Ronald Winkles, 22.73%

9

State Rep 13, Charles Meyer, 4.97%
State Rep 22, Samuel Ray Ledford, 16.76% State Rep 23, Robert Callaway, 23.47% State Rep 43, Richard Sharpe, 4.05% State Rep 48, Shannon Dickens, 4.53% State Rep 56, Rich Husband, 3.29%
2002: Governor, Ray Ledford, .10%
US House 2, Joshua Williamson, .60%
US House 3, William Bohen, 1.00%
US House 4, John Ray, .33%
US House 5, Jesse Turner, .51%
US House 7, Rick Patterson, 2.77%
State Sen 31, Barbara Leding, 9.78%
State Rep 2, Glen Moody, 6.46%
State Rep 13, Chuck Meyer, 19.64%
State Rep 31, Jonathan McGlumphy, 2.37%
State Rep 75, Charles Cooper, 22.33%
2004: Michael Badnarik, president, .20% State Rep 26, Daniel Lewis, 1.95%
State Rep 29, Brent Benedict, 3.12% (none in 2006)

      6.     Please identify with specificity what actions the Libertarian Party has taken to obtain recognition as a statewide political party in Tennessee for the 2008 election year, including:

      (a)     The date when you first started any actions to obtain recognition;

      (b)     Identification of all actions taken up to the filing of the Complaint in this matter, including the date of each action;

      (c)     Identification of all actions taken after the filing of the Complaint in this matter, including the date of each action; and

      (d)     Identification of all persons taking the specific actions.

<u>ANSWER</u>:     No action has been taken to petition for ballot access in Tennessee for the 2008 election year. The current laws make it impossible for the Libertarian Party of Tennessee to comply with the membership requirements contained therein. We have attempted to gain ballot access through the Legislative process but have been unsuccessful.

10

In 2000, the Libertarian Party got SB 2149 and HB 2594 introduced. They would have let independent candidates choose a partisan label, which would have been printed on the November ballot. It passed, but only after the legislature made some very hostile changes. The changes said that the law only applied to candidates representing groups that had polled at least 5,000 votes for president in 1996. After 2000, it would only apply to groups that had polled 5% for president in 2000. That is why the Libertarian, Reform and Green Parties did have labels on the November 2000 ballot in Tennessee. It was no help for future years.

In 2001, the Libertarian Party got SB 1713 and HB 1805 introduced. They were just like the original bills that had been introduced in 2000. They permitted partisan labels for anyone using the independent procedure.

In 2004, the Libertarian Party got SB 3233 and HB 3043 introduced. They were the same as the 2001 bills.

In 2005, the Libertarian Party got SB 1327 and HB 1776 introduced. They were just the same as the 2001 bills.

In 2007, the Libertarian Party got a new idea introduced, SB 288 and HB 626. They said there would be two tiers of qualified parties in Tennessee. Parties that just wanted to nominate by convention only would have needed 2,500 valid signatures to qualify.

All of these bills failed utterly. None of them (except in 2000) made any headway in any committee.

7.     If the actions identified in response to Interrogatory No. 6 includes the obtaining of signatures on petitions, please identify with specificity: (a) the date on when signatures on petitions were first sought; (b) how many petitions the Libertarian Party has circulated for

signatures; (c) where the Libertarian Party has circulated petitions for signatures; (d) how many people were involved in obtaining signatures on petitions, including their identities; (e) how many signatures were obtained prior to the filing of the Complaint in this matter; (f) how many signatures were obtained after the filing of the Complaint in this matter; and (g) the last date on which the Libertarian Party sought to obtain signatures on a petition.

ANSWER:

    Not applicable.

    8.    With respect to any petitions identified in response to Interrogatory No. 7, please identify any person(s), including name and address, who refused to sign a petition on the grounds that they were not a member of the Libertarian Party.

ANSWER:

    Not applicable.

    9.    Please identify with specificity all persons with any knowledge concerning the actions of the Libertarian Party identified in response to Interrogatory Nos. 6, 7 and 8, including their name, address and the relevant facts or other information which the individual(s) possess.

ANSWER:

    Not applicable.

    10.    Please identify with specificity each instance, prior to the 2008 election year, where the Libertarian Party has taken action to obtain recognition as a statewide political party. For each instance, please identify the following:

    (a)    The date when the Party first started any actions to obtain recognition;

    (b)    Identification of all actions taken; and

     (c)     The results of those actions.

ANSWER:    While the Libertarian Party has never petitioned to obtain ballot access in Tennessee, it has on occasion tried to get improved or more reasonable ballot access bills accepted by the Tennessee Legislature. Also, see answer to Interrogatory No. 6 hereinabove.

     11.    If the actions identified in response to Interrogatory No. 10 include the obtaining of signatures on petitions, for each instance identified, please also identify with specificity: (a) the date on when signatures on petitions were first sought; (b) how many petitions the Libertarian Party circulated for signatures; (c) where the Libertarian Party circulated petitions for signatures; (d) how many people were involved in obtaining signatures on petitions and the identification of these persons; (e) how many signatures were obtained; (f) any person(s), including name and address, who refused to sign a petition on the grounds that they were not a member of the Libertarian Party; and (g) any person who was excluded from a petition on the grounds that they were not a member of the Libertarian Party.

ANSWER:   Not applicable.

     12.    Please identify with specificity all instances where the State Coordinator of Elections or any County Election Commission has rejected or excluded the signature of a person on a petition submitted by the Libertarian Party on the grounds that such person is not member of the Libertarian Party.

ANSWER:   Not applicable.

     13.    Please identify with specificity the officers, if any, of the Libertarian Party of Tennessee, including their names, addresses, date of election or appointment and terms of office.

ANSWER:   Anthony E. Wall is the Chairman of the Tennessee Libertarian Party, 354

13

Summerville Road, Kingsport, TN 37663, (423) 534-8848; Vice-Chair is presently vacant; William Enfield is the Treasurer of the Tennessee Libertarian Party of Tennessee, 661 Summerville Road, Kingsport, TN 37663; Ray Ledford is the Secretary for the Tennessee Libertarian Party of Tennessee, 162 Casteel Rd SE, Cleveland, TN 37323.

14.     Please identify with specificity the total membership of the Libertarian Party of Tennessee, including any local or county chapters of the Party.

ANSWER:     The total current documented Libertarian Party of Tennessee membership is 1,980.

15.     Please identify with specificity the facts supporting the allegations contained in Section IV of the Complaint.

ANSWER:     No new political party has been able to be recognized in the State of Tennessee since it was successfully done by George Wallace's American Party in 1968. Because 1,818,549 votes were cast for Governor in the most recent Gubernatorial election in Tennessee (2006), 45,464 registered Tennessee voters would have to sign a new party petition as members of the party in order for a new party to be recognized in Tennessee. The 2½% of the last vote for Governor in Tennessee is among the most restrictive in the United States. The few states which have an equal to or greater percentage requirement do not require voters to say they are members of the party and allow voters to sign more than one new party petition. Further, other states have specific and clear deadlines as to when the petition signatures are due and do not require a minimum petition deadline of at least 120 days before the political party primary dates. In Tennessee, the State Primary elections this year are on August 7, 2008, with the General Election being held on November 4, 2008. What distinguishes Tennessee from other states is that the

14

election law for new political parties requires party membership of 2½% rather than simple petition signatures of voters saying they wish the party to be able to appear on the Tennessee ballot. See TCA, Election Code, § 2-1-104(a)(29)(B).

16.    Please identify with specificity the facts supporting the allegations contained in Section VI of the Complaint.

ANSWER:    See answer to Interrogatory No. 15 hereinabove.

17.    Please identify with specificity the facts supporting the allegations contained in Section VIII of the Complaint.

ANSWER:    See answer to Interrogatory No. 15 hereinabove. Additionally, the nominees of the Democratic and Republican parties for President of the United States will not formally be concluded this year until early September. While the probable nominees of the Democratic and Republican parties for President are currently known, the Vice Presidential candidates will not be chosen until the parties' conventions at the end of August and early September, respectively. Further, most voters do not focus on political issues prior to the actual Primary and General Elections. In fact, minor party candidates are generally only considered after voters know who the major party candidates are going to be and become dissatisfied with them. While Tennessee voters might be willing to ask for recognition of additional new parties to give Tennessee voters more choice, there is simply no benefit for someone becoming a member of an unrecognized party well in advance of the General and Primary elections and not knowing if the unrecognized new political party will even obtain recognition. This is particularly important considering there have been no new recognized political parties since the American Party achieved recognition in 1968 (a recognition subsequently lost after the 1970 and 1972 elections because of failure to

15

meet Tennessee's ballot retention law). While not exactly a fact—more of a matter of law— every state which previously required membership in a petition to recognize a new political party has been declared unconstitutional—North Carolina, South Dakota, Nebraska, Nevada, Pennsylvania, New Mexico, Kentucky, and Ohio. There simply has been no frequency in the last 40 years of new political parties obtaining ballot access and recognition in Tennessee, unlike the history of ballot access for new political parties in other states.

18.     Please identify with specificity the facts supporting the allegations contained in Section IX of the Complaint.

ANSWER:     See answers to interrogatory numbers 5, 6, 10, 11, and 15 hereinabove.

19.     Please identify with specificity when how the Libertarian Party of Tennessee first learned of the Tennessee state law requirements to obtain recognition as a statewide political party.

ANSWER:     As far as can be determined at this date the Libertarian Party became aware of the law no later than 1976. The Tennessee Libertarian Party filed a lawsuit in the State Court of Tennessee in 1976 in the case of *Tennessee Libertarian Party v. Democratic Party of Tennessee*, 555 S.W.2d 102 (1977).

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.     Please produce each and every document identified in your response to these interrogatories and each and every document used or referred to in answering these interrogatories.

ANSWER: Documents responsive to this request are attached hereto.

2.     Please produce each and every document upon which you relied in preparing your

Complaint and/or which support the factual and legal allegations contained in the Complaint you have filed in this matter.

ANSWER: Documents responsive to this request are attached hereto.

3. Please produce each and every document you intend to rely upon which is not otherwise privileged or protected under law in any hearing or trial of this matter. If any Request to Produce is deemed to call for the production of any document containing privileged oral or written communication, or information protected from disclosure by the work product doctrine or otherwise, a list of each document withheld is to be furnished, and shall contain (a) the identity of the speaker or author; (b) the identify of the persons to whom the communication was directed; (c) the identify of all other persons who were present at the time of the oral communication or who have read the written communication; (d) the identity of all other persons who have information about the communication; (e) the date of the communication; (f) the place of the communication; (g) the manner in which the communication was made; (h) the duration of the communication; (i) the subject matter of the communication; (j) a statement of fact constituting the basis for withholding the information; and (k) state the request to which the information or document relates.

ANSWER: Documents responsive to this request are attached hereto.

4. Please produce copies of any petitions identified in response to Interrogatory No. 7.

ANSWER: Plaintiff Libertarian Party of Tennessee has no documents responsive to this request.

5. Please produce copies of any petitions identified in response to Interrogatory No.

17

10.

ANSWER: Plaintiff Libertarian Party of Tennessee has no documents responsive to this request.

6.      Please produce copies of all communications, including but not limited to correspondence, newsletters, news releases, party directives, memoranda, and electronic communications concerning or relating to the Libertarian Party of Tennessee's efforts to obtain recognition as a statewide political party in 2008.

ANSWER: Documents responsive to this request are attached hereto.

7.      Please produce copies of all communications, including but not limited to correspondence, newsletters, news releases, party directives, memoranda, and electronic communications concerning or relating to the Libertarian Party of Tennessee's efforts to obtain recognition as a statewide political party prior to 2008.

ANSWER: Documents responsive to this request are attached hereto.

8.      Please produce copies of minutes of meetings of the Libertarian Party of Tennessee.

ANSWER: Documents responsive to this request are attached hereto.

9.      Please produce copies of any charter, by-laws, and rules of proceeding of the Libertarian Party of Tennessee, and any amendments or modifications thereto.

ANSWER: Documents responsive to this request are attached hereto.

10.     Please produce all documents identified in response to Interrogatory No. 19.

ANSWER: Plaintiff Libertarian Party of Tennessee has no documents responsive to this request.

18

## VERIFICATION OF ANSWERS

I, __Anthony E. Wall__, after being duly sworn in accordance with the law, make oath that I am __Libertarian Party of TN Chairman__, and that I am duly authorized for the purposes of answering these interrogatories and making this verification, that I have provided the answers to these interrogatories upon such information as is available to me and that such answers are true, correct, and complete to the best of my knowledge, information, and belief.

_____ [name]
Anthony E. Wall
Chairman [position]

Sworn to and subscribed before me this __17th__ day of __June__, 2008.


_____
Notary Public

Commission and Expiration: __August 30, 2008__
(SEAL)

Respectfully submitted this __18th__ day of __June__ 2008.

JAMES C. LINGER, OBA#5441
Counsel for Petitioners


1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com

19

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this _18TH_ day of _June_, 2008, a true and correct copy of the

above and foregoing responses were served at:

JANET KLEINFELTER,
Senior Counsel
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
janet.kleinfelter@state.tn.us

*Counsel for Defendants*

James C. Linger, OBA No. 5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com


Darrell L. Castle, TNB No. 6863
Darrell L. Castle & Associates
3100 Walnut Grove, Suite 610
Memphis, TN 38111
(901) 327-2100
(901) 458-9443 Facsimile
dlc2586@aol.com

*Counsel for Plaintiffs*

20