IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LIBERTARIAN PARTY OF TENNESSEE, )
ANTHONY WALL, GREEN PARTY OF )
TENNESSEE, KATHLEEN A. CULVER, )
CONSTITUTION PARTY OF )
TENNESSEE and JOAN CASTLE, )
)
    Plaintiffs, )
)
v. )   Case No. 3:08-0063
)   Judge Haynes
MARK GOINS, Coordinator of )
Elections for the State of Tennessee, and )
TRE HARGETT, Secretary of State for the )
State of Tennessee, )
)
    Defendants. )

# DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Secretary of State for the State of Tennessee and the Coordinator of Election for the State of Tennessee hereby submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment.

1.    Tennessee's election laws define a political party as "an organization which nominates candidates for public office." (Tenn. Code Ann. § 2-1-104(a)(14)).

2.    In order to obtain recognition as a *statewide* political party, an organization must meet one of the following requirements:

- Within the last four years, have at least one candidate for an office to be elected by voters of the entire state receive at least five percent (5%) of the number of votes cast for all gubernatorial candidates in the most recent election for governor; or

- File with the State Coordinator of Elections a petition signed by registered voters totaling at least two and a half percent (2 ½%) of the total number of votes cast for governor in the last election for governor, which achieves statewide political party status for one year.

(Tenn. Code Ann. § 2-1-104(a)(30)).

3. A statewide political party is required to nominate its candidates for four offices – governor, general assembly members, U.S. Senator and U.S. Representative – by primary election. They may nominate their candidates for all other offices by any method authorized under the rules of the party or by primary election under this title. (Tenn. Code Ann. §§ 2-13-202, 203).

4. Both independent and primary candidates for any office to be filled at the regular November election for which a primary is required to be held at the regular August election shall qualify by filing such candidate's nominating petition no later than twelve o'clock (12:00) noon, prevailing time, on the first Thursday in April. (Tenn. Code Ann. § 2-5-101(a)(2)).

5. Plaintiffs have not challenged the constitutionality of Tenn. Code Ann. § 2-5-101, either separately or in tandem with any other statute contained in Title 2 of the Tennessee Code Annotated. (Plaintiffs Complaint at pp. 3-7).

6. In order to qualify as a candidate for any office, whether as candidate in the primary election or as an independent in the general election, Tennessee's election laws only require the filing of a nominating petition signed by the candidate and twenty-five (25) or more registered voters who are eligible to vote to fill the office by the qualifying deadline, with the

2

exception of independent presidential candidates. For independent presidential candidates, the statutes require a petition to be signed by the candidate and twenty-five (25) or more registered voters for each elector allocated to Tennessee (*i.e.,* 275 signatures of registered voters). (Tenn. Code Ann. § 2-5-101(b)(1)).

7. Since the names of the state executive committee members for a statewide political party must be certified to the State Coordinator of Elections at least ninety (90) days before the August election and since party primary candidates for the office of governor, general assembly member, U.S. Senator and U.S. Representative must qualify by the first Thursday in April, the Coordinator of Elections requires that the petitions to obtain recognition as a statewide political party must be filed at least thirty (30) days before the qualifying deadline for the August state primary, *i.e.*, the first Thursday in March. (Affidavits of Mark Goins and Brook Thompson, Exhibits A and B to Defendants' Motion for Summary Judgment).

8. The thirty day time period is absolutely necessary to give state and local county election officials enough time to certify the registration of voters who have signed the petitions and to determine whether the petitions are sufficient to confer statewide political party status on an organization. (Affidavits of Mark Goins and Brook Thompson, Exhibits A and B to Defendants' Motion for Summary Judgment).

9. Tennessee's elections laws require that before a political party may have its nominees on a ballot or exercise any of the rights of political parties, it must have filed with the State Coordinator of Elections copy of the rules under which the party and its subdivision operate. (Tenn. Code Ann. § 2-1-114).

10. None of the Plaintiff political parties has filed a copy of their rules with the State Coordinator of Elections. (Affidavit of Mark Goins, Exhibit A).

3

11. Tennessee has a population of approximately 6.2 million and currently has over 3.8 million registered voters. (Affidavit of Mark Goins, Exhibit A).

12. In registering to vote, Tennessee's election laws do not and have not ever required that an individual register by political party affiliation. (Affidavits of Mark Goins and Brook Thompson, Exhibits A and B).

13. The State Division of Elections has developed a handout titled "Procedures for Recognition as a Statewide or Local Political Party in Tennessee" that is routinely provided in the first instance to any individual or organization who inquires about the process for obtaining recognition as a statewide political party. (Exhibit 1 to Affidavit of Beth Henry-Robertson attached as Exhibit C to Defendants' Motion for Summary Judgment).

14. This hand-out does not contain any language indicating that a petition must be signed by members of the party seeking to obtain recognition as a statewide political party. (Affidavits of Mark Goins, Brook Thompson and Beth Henry Robertson, Exhibits A, B and C).

15. The State Division of Elections will work with an organization seeking to obtain recognition as a statewide political party to approve the format of the organization's petition. In approving the format of a petition, the Division looks to see that the petition includes the following three things: (1) title, *i.e.*, what the petition is for; (2) a summary or statement of the purpose of the petition; and (3) appropriate space for the signatures of registered voters, including space not only for the person's signature, but also for the person to print his/her name and provide their full address, including the county. The Division does not in any way mandate the language to be used in the petition nor does it review the language used, particularly in the summary of the petition. (Affidavit of Beth Henry Robertson, Exhibit C).

4

16. In 2002, the State Division of Elections developed a sample form petition. This sample form does not contain any provision for a person to indicate party membership or affiliation on the fact of that petition. (Affidavit of Beth Henry-Robertson and Exhibit 2 attached thereto).

17. The State Division of Elections, in conjunction with the local county election commission, only reviews and certifies the registration of voters signing the petition. It does not certify, review or otherwise make any determination as to whether the registered voters are also members of the party in question. (Affidavits of Mark Goins, Brook Thompson and Beth Henry-Robertson, Exhibits A, B and C).

18. Voters' signatures on petitions have not been rejected nor would they be rejected on the grounds that the voters failed to identify their party membership or affiliation on the petition. (Affidavits of Mark Goins, Brook Thompson and Beth Henry-Robertson, Exhibits A, B and C).

19. New party petitions have not been rejected on the grounds that they failed to indicate party membership of the signers of the petition nor would they be rejected on those grounds. (Affidavits of Mark Goins, Brook Thompson and Beth Henry-Robertson, Exhibits A, B and C).

20. The founding date of the Libertarian Party of Tennessee ("LPT") is unknown. (Deposition of Anthony Wall at p. 11, attached as Exhibit D to Defendants' Motion for Summary Judgment (hereinafter referred to as "Wall Deposition").

21. The LPT has approximately six to seven county affiliates and several regional affiliates (*e.g.*, Upper Cumberland, Tri-Cities). (Exhibit D, Wall Deposition at p. 60).

5

22. The LPT currently has approximately 1,980 members. (Exhibit D, Wall Deposition at p. 59; LPT Responses to Interrogatories attached as Exhibit E to Defendants' Motion for Summary Judgment).

23. Membership in either the national Libertarian Party or a county or regional affiliate automatically confers membership in the LPT. Membership requirements in the LPT are otherwise intentionally vague. Essentially, if an individual participates in the LPT at the state level, either through its state website, blog sites or other forms of activism, such individual is considered to be a member of the LPT. However, in order to actually participate in the LPT's business (*i.e.*, vote), an individual must be accepted by the delegates at the LPT's state convention upon a recommendation of an officer of the party or a regional coordinator. (Exhibit D, Wall Deposition at 57-58; Exhibit 4 to Wall Deposition).

24. The LPT does not maintain any official headquarters or paid staff, although it does operate a website. The LPT also does not have any rules or procedures by which the party operates other than its By-Laws. (Exhibit D, Wall Deposition at p. 71; Exhibit 4 to Wall Deposition).

25. Since at least 1976, there has been a presidential candidate on the ballot in Tennessee that has been endorsed by the LPT as their candidate, although listed on the ballot as an independent candidate. (Exhibit E, Response No. 5).

26. All of these candidates have received less than one percent (1%) of the vote in the presidential election. (*Id.*)

27. In the November 2000 presidential election, the LPT's candidate, Harry Browne, was identified on the ballot as the LPT's candidate. He received only .21% of the votes cast in Tennessee. (Exhibit E, Response No. 5; Wall Deposition at 39-40).

6

28. The LPT has never had a candidate for a statewide office that has received at least five percent of the number of votes cast for all gubernatorial candidates in the most recent election for governor. (Exhibit E, Response No. 5; Exhibit D, Wall Deposition at 37-38.)

29. The LPT has also never had a candidate for a statewide office that has received at least five percent (5%) of the votes cast in that election. (Exhibit E, Response No. 5).

30. The LPT has also never taken *any action* to obtain recognition as a statewide political party through the petition process. (Exhibit D, Wall Deposition at 41-43; Exhibit E, Response Nos. 6 and 10).

31. The Constitution Party of Tennessee ("CPT") was established in 1992 by Plaintiff Joan Castle and Darrell Castle. (Deposition of Joan Castle at p. 8, attached as Exhibit F to Defendants' Motion for Summary Judgment (hereinafter referred to as "Castle Deposition")).

32. The CPT does not have a charter, by-laws, or any rules of proceeding. It has no formal registration of members, but instead, considers people who are on its mailing list to be members of the organization. The CPT currently has 631 names on its mailing list. (CPT's Responses to Interrogatories, Response No. 14, attached as Exhibit G to Defendants' Motion for Summary Judgment).

33. The CPT does not have regular meetings, although it may meet once every four years. It does not keep minutes of any of its meetings, nor does it keep any records of the actions or activities of the CPT. It also does not maintain an office space or paid staff. (Exhibit F, Castle Deposition. at 52-56).

34. The CPT is "a group of people in the state who all agree that [they] are members of an affiliate of the [National] Constitution Party." (*Id.* at 53 (lines 4-6)).

7

35. Since 1992, there has been a presidential candidate on the ballot in Tennessee that has been endorsed as the CPT's candidate, however they have been identified on the ballot as an independent candidate. (Exhibit G, Response No. 5).

36. All of these candidates have received less than one percent (1%) of the vote in the presidential election. (*Id.*)

37. Pursuant to the "Fair Ballot Access Act of 2000" (codified at Tenn. Code Ann. § 2-5-208(d)(1)), the CPT's presidential candidate was listed on the ballot as the candidate of the Constitution Party in the November 2000 presidential election. However, the CPT's candidate, Howard Phillips, only received .05% of the votes cast in Tennessee. (Exhibit G, Response No. 5.)

38. The CPT has never had a candidate for a statewide office and, consequently, has never had a candidate for a statewide office that has received at least five percent of the number of votes cast for all gubernatorial candidates in the most recent election for governor. (Exhibit G, Response No. 5).

39. The CPT made one attempt in 2001 to obtain recognition as a statewide political party through the petition process for the 2004 presidential election. (Exhibit G, Response No. 6; Exhibit F, Castle Deposition at p. 39).

40. In mid-August, 2001, the CPT's petition was approved by the State Division of Elections. This petition did not contain any requirement on its face that the individual signing the petition be a member of the CPT. (Exhibit F, Castle Deposition at p. 40, 61; Exhibit 2 to Castle Deposition; *see also* Exhibit G, Response No. 6.)

41. In obtaining signatures on their petition, the CPT did not inquire as to whether the person signing the petition was a member of the CPT. (Exhibit G, Response Nos. 8 and 12 (f).)

42. On September 6, 2001, the CPT submitted 293 petition pages containing approximately 4200 signatures. (Affidavit of Beth Henry Robertson, Exhibit C.)

43. On November 2, 2001, the CPT submitted another 345 petition pages containing approximately 5000 signatures. The State Division of Elections does not have any record of any petition pages submitted to it by the CPT after November 2, 2001. (*Id.*)

44. The Green Party of Tennessee ("GPT") was initially established in 1992-1993, however, the members were unable to keep a "core group together that went from election to election." (Deposition of Kathleen Culver at p. 12, attached as Exhibit H to Defendants' Motion for Summary Judgment (hereinafter referred to at "Culver Deposition")).

45. The GPT was re-established in 1999-2000 in time for the 2000 Presidential election. (*Id*).

46. The GPT does have By-Laws and Rules for the GPT's Nominating Convention and Presidential Candidate Election. (Exhibit I and J).

47. With respect to nominating conventions, the By-Laws require that for state-wide offices, nominating conventions are to be called at a minimum of one month prior to any and all related State of Tennessee candidate filing deadlines. (Exhibit I, Article V.C.)

48. Membership in the GPT is obtained through "self-recognition and agreement to the Ten Key Values." (Exhibit H, Culver Deposition at p. 47; Exhibit I, Article III.A.)

49. A member obtains voting rights by submitting a signed copy of the 10 Key Value pledge form to the SCC. (Exhibit H, Culver Deposition at 48; Exhibit I, Article III.A.).

50. Because membership in the GPT can be obtained simply by self-recognition, the GPT has no official record of its membership; however the number of people served by the GPT and its county chapters through services such as email listserv, newsletters and correspondence is

9

approximately 500. (GPT's Responses to Interrogatories, Response No. 14, attached as Exhibit K to Defendants' Motion for Summary Judgment; Exhibit H, Culver Deposition at 50-51.)

51. Since the GPT was re-established in 1999-2000, it has only had one presidential candidate on the ballot in Tennessee. (Exhibit K, Response No. 5.)

52. In 2000, pursuant to the "Fair Ballot Access Act of 2000" (codified at Tenn. Code Ann. § 2-5-208(d)(1)), the GPT's presidential candidate was listed on the ballot as the candidate of the Green Party in the November 2000 presidential election. However, the GPT's candidate, Ralph Nader, only received .95% of the votes cast in Tennessee. (Exhibit K, Response No. 5.)

53. The GPT has never had a candidate for a statewide office that has received at least five percent of the number of votes cast for all gubernatorial candidates in the most recent election for governor and thus, has not obtained recognition as a statewide political party through that process. (Exhibit K, Response No. 5.).

54. The GPT has never had a candidate for a statewide office that has received at least five percent (5%) of the votes cast in that election. (Exhibit K, Response No. 5).

55. The GPT has also never attempted to obtain recognition as a statewide political party through the petitioning process, even though the GPT had recognized that it was attainable goal that the party should work hard to meet. (Exhibits 2, 6 and 7 to Exhibit H, Culver Deposition; Exhibit K, Response Nos. 6 and 10.).

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General and Reporter

10

/s/ Janet M. Kleinfelter
JANET M. KLEINFELTER
Deputy Attorney General
Public Interest Division
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-7403
Janet.kleinfelter@ag.tn.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on the __15th__ day of January 2010, that a copy of the above document has been served upon the following persons by:

__X__                                           Electronic Case Filing (ECF) System to:

JAMES C. LINGER (OBA #5441)
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797
bostonbarristers@tulsacoxmail.com

DARRELL L. CASTLE (BPR 6863)
3100 Walnut Grove, Suite 610
Memphis, TN 38111
(901) 327-2100
Dlc2586@aol.com

/s/ Janet M. Kleinfelter
JANET M. KLEINFELTER

11