IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LIBERTARIAN PARTY OF TENNESSEE, )
ANTHONY WALL, GREEN PARTY OF )
TENNESSEE, KATHLEEN A. CULVER, )
CONSTITUTION PARTY OF TENNESSEE, )
and JOAN CASTLE, )
 )
                ....Plaintiffs, )  Case No. 3: 08-0063
 )  Judge Haynes
    v. )
 )
BROOK THOMPSON, Coordinator of )
Elections for the State of Tennessee; and )
TRE HARGETT, Secretary of State )
for the State of Tennessee, )
                ....Defendants. )

**PLAINTIFFS' MEMORANDUM BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

I.  CONCISE STATEMENT OF THE FACTUAL AND LEGAL ISSUES
WHICH JUSTIFY THE GRANT OF RELIEF SOUGHT

      This case is a ballot access case on behalf of three unrecognized Tennessee political parties and members of said unrecognized Tennessee political parties. Plaintiffs seek declaratory and injunctive relief from the Court, but do not request of the Court at this time that the Court dictate to the Tennessee legislature what the pertinent law should be. Rather, Plaintiffs only ask that the Court state that the current laws are unconstitutional as applied, and permanently enjoin the enforcement of said laws.

      The laws in question in the instant case are as follows, to-wit:

      **T.C.A., Election Code, § 2-1-104(a)(14).**

      (a) In this title, unless a different meaning is clearly intended:

      (14) "Political party" means an organization which nominates candidates for public

office;

* * * *

**T.C.A., Election Code, § 2-1-104(a)(29).**

(a) In this title, unless a different meaning is clearly intended:

(29) "Statewide political party" means either:

(A) A political party at least one (1) of whose candidates for an office to be elected by voters of the entire state in the past four (4) calendar years has received a number of votes equal to at least five percent (5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor; or

(B) For one (1) year after petitioning successfully, a political party which has a membership equal to at least two and one-half percent (2.5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor as shown by petitions to establish a political party filed with the coordinator of elections and signed by registered voters as members of the party and certified as to registration of the signers by the county election commissions of the counties where the signers are residents. [Acts 1972, ch. 740, §§ 1, 5; 1973, ch. 327, § 1; 1975, ch. 72, § 5; T.C.A., § 2-104; Acts 1980, ch. 725, §§ 1,2; 1983, ch. 450, § 1; 1990, ch. 727, §§ 1,2.]

* * * *

**T.C.A., Election Code, § 2-1-107.**

(a) Any person signing a petition required under this title, whether for nomination of a candidate, for a referendum or for any other purpose, shall include the address of such person's residence. The signer of a petition must include the address of such person's residence as shown on such person's voter registration card in order for that person's signature to be counted; provided, that if the address shown on the petition is within the precinct in which the person is registered but is

not the address shown on the registration card, the signature shall be valid and shall be counted. In the event that the signer of a petition includes information on a nominating petition that exceeds the information contained on such person's voter registration card, the signature shall be counted if there is no conflict between them. If no street address is shown on the signer's voter registration card, that person's signature and address as shown on such person's voter registration card shall be sufficient. However, a street address shall be sufficient, and no apartment number shall be required.

(b) Any person who signed a permanent registration card shall sign any petition signed under this title; provided, that any person who printed such person's name on such person's permanent registration card shall print the name on any petition signed under this title. However, failure to comply with the foregoing shall not operate to disqualify any nominating signature or candidate's signature.

(c) A person's regular signature shall be accepted just as such person's legal signature would be accepted. For example, for the purposes of this section "Joe Public" shall be accepted just as "Joseph Q. Public" would be accepted. [Acts 1972, ch. 740, § 1; T.C.A., § 2-106; Acts 1981, ch. 478, § 2; 1988, ch. 933, § 1.]

\* \* \* \*

**T.C.A., Election Code, § 2-1-114.**

No political party may have nominees on a ballot or exercise any of the rights of political parties under this title until its officers have filed on its behalf with the secretary of state and with the coordinator of elections:

(1) An affidavit under oath that it does not advocate the overthrow of local, state or national government by force or violence and that it is not affiliated with any organization which does advocate such a policy; and

(2) A copy of the rules under which the party and its subdivisions operate.

3

Copies of amendments or additions to the rules shall be filed with the secretary of state and with the coordinator of elections within thirty (30) days after they are adopted and shall be of no effect until ten (10) days after they are filed. [Acts 1972, ch. 740, § 1; T.C.A., § 2-114.]

\* \* \* \*

**T.C.A., Election Code, § 2-13-201(a).**

(a) No person's name may be shown on a ballot as the nominee of a political party for the offices named in § 2-13-202 or for any office voted on by the voters of more than one (1) county unless the political party:

(1) Is a statewide political party; and

(2) Has nominated the person substantially in compliance with this chapter.

[Acts 1972, ch. 740, § 1; 1978, ch. 754, § 13; T.C.A., § 2-1312.]

\* \* \* \*

**T.C.A., Election Code, § 2-13-202**.

Political parties shall nominate their candidates for the following offices by vote of the members of the party in primary elections at the regular August election:

(1) Governor;

(2) Members of the general assembly;

(3) United States senator; and

(4) Members of the United States house of representatives. [Acts 1972, ch. 740, § 1; T.C.A., § 2-1314; 1995, ch. 305, § 60.]

While T.C.A., § 2-1-104(a)(14) defines a political party as an organization which nominates candidates for public office, T.C.A., § 2-1-104(a)(29), taken in conjunction with T.C.A., §§ 2-1-107, 2-13-201(a), and 2-13-202, allows a new statewide political party to be recognized to run candidates on the ballot in the State of Tennessee for one year after petitioning successfully by presenting a petition with at least 2.5 percent of the total number of votes cast for all gubernatorial

4

candidates in the most recent gubernatorial election as shown by petitions to establish a political party filed with the Coordinator of Elections and signed by Tennessee registered voters as members of the political party.

Because of the petitioning requirement of a rather stringent 2.5 percent and party membership of the petition signers, and the in effect minimum petition deadline requirement of at least 120 days before the August Primary (which was held on August 7, 2008, in the last election year), the supporters of the non-recognized political parties herein (Libertarian, Green, and Constitution) were unable to marshal their resources in such a manner as to conduct a successful petition drive in Tennessee pursuant to T.C.A., § 2-1-104(a)(29)(B), so as to meet the aforesaid petition signature deadline, party membership requirement, and required number of signatures. In fact, it has been more than 40 years since a new political party was recognized by the State of Tennessee.

The Tennessee ballot access laws for new political parties in the State of Tennessee complained of herein, as applied to the non-recognized Plaintiff political parties herein and their supporters, set an unconstitutional burden because achieving statewide political party status by filing the petitions required under T.C.A., § 2-1-104(a)(29)(B) lasts for only one year, and, thus, in order to achieve ballot status in a Presidential or Gubernatorial election year and have the new political party's candidates on the ballot in Tennessee, the Petitions cannot be filed more than one year before the General election. Further, because the Coordinator of Elections requires the Petitions to form a new political party to be filed at least 30 days before the qualifying deadline for the State Primary held in August of even-numbered years so that there is an administrative period for county election commissions to verify the signatures on the Petition and for the Coordinator of Elections to determine whether the Petitions are sufficient to create a new party, it is only after this certification is made that the new party may meet and select executive committee members. However, it is only after a new political party becomes a State recognized political party that it can select a State executive committee to be elected at a statewide convention of the party. While there

5

Case 3:08-cv-00063   Document 25   Filed 01/15/10   Page 5 of 20 PageID #: 295

is no particular time for this election to be held by the new political party, the new political party is limited by the requirement that the Chairperson and the Secretary of its Convention must then certify the election of the members of the Executive Committee to the Coordinator of Elections no later than 90 days before the next regular August election.

Additionally, a petitioning political party would have to meet the 2.5 percent of the last total vote for governor in Tennessee by having registered Tennessee voters who not only want the new political party on the ballot but must state that they are members of the political party. Of course, the Defendants herein will not require the State recognized Republican and Democratic parties to present any petitions certifying their party membership in Tennessee because said political parties are already recognized in the State of Tennessee pursuant to T.C.A., § 2-1-104(a)(29)(A).

Therefore, with the 30 day administrative period to verify the signatures on the new political party petition in Tennessee and the minimum 90 days before an August election in Tennessee for the new political party to certify the election of the members of its executive committee (after having a statewide convention of the new political party), there is in effect a minimum of at least a 120 day deadline for the new political party petition prior to the Primary election in August in Tennessee. However, because of the requirements of the calling of a state convention, notice thereof, travel thereto, and other related matters, the 120 day deadline before the August Primary election in Tennessee is an understatement of the actual time required. In any event, no new political party has been able to comply with the law in Tennessee by obtaining recognition and placing its candidates on the Tennessee ballot to participate in the Primary and General elections since 1968 (when George Wallace's American Party in the Presidential Election finished ahead of the candidate of the Democratic Party in Tennessee and second in a close race with the Republican candidate for President in Tennessee).

The aforesaid early, vague, and discriminatory petition signature deadline in Tennessee for new political parties, coupled with the high signature requirement showing party membership, forces a new political party to seek recognition before the nominees of the recognized political

6

parties are known or the issues are formed for the next election campaign, and unconstitutionally requires petition signers to say they are members of the unrecognized political party for which there is no election benefit or rights under the laws of the State of Tennessee. Because of the aforesaid discriminations, the vague and unnecessarily early deadline, and the unconstitutional infringement upon political association and political party membership, Tennessee's early and vague new political party petition deadline and unnecessarily stringent signature requirement of political party membership, as set forth in T.C.A., § 2-1-104(a)(29)(B), effectively eliminates the ability of unrecognized political parties to gain political party recognition in the State of Tennessee, deprives their supporters of the ability of voting for them by political association with the party of their choice, and transforms the petitioning process from a way to obtain recognition for new political parties to an arbitrary, vague, discriminatory, and unnecessarily severe means of preserving the status quo of a two-party system in Tennessee. Tennessee's requirement that registered voters who sign petitions for new party recognition must indicate that they are members of the new political party has been declared unconstitutional in every instance in which it has been litigated, viz.: North Carolina, South Dakota, Nebraska, Nevada, New Mexico, Kentucky, and Ohio. Tennessee's early and vague political party petition deadline and the petition signature requirement places an undue, unreasonable, and unjustified burden on new political parties and their supporters. The Defendants lack any compelling interest in the aforesaid early and vague petition deadline or the petition signature and party membership requirements in Tennessee as it applies to new political parties and their supporters seeking recognition in Tennessee.

## II. CONCISE STATEMENT OF MATERIAL FACTS TO WHICH NO GENUINE ISSUE EXISTS

The Plaintiffs to the instant case submit that there is no genuine issue as to the following material facts:

1. In the United States minor political parties always, or virtually always, appear on state ballots in presidential and congressional election years. Tennessee has excluded all minor party

labels from the general election ballot for all Tennessee elections since 1972 (except for 2000)(Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.3, ¶5).

2. Minor political parties appeared regularly on the Tennessee ballot until the existing petition law was imposed in 1961. For example, in 1960, the Tennessee ballot had four political parties listed on it (Democratic, Republican, Constitution, and Prohibition)(Plaintiff's Exhibit 1, Affidavit of Richard Winger, p.3, ¶9).

3. Normally, minor political parties appear on the ballot in every presidential and congressional election year in virtually all states of the Union starting in 1889, the year when state governments started printing ballots. Prior to 1889, there were no government-printed ballots in state and federal elections in the United States; voters were free to make their own ballots or simply use the ballots printed by the voter's favorite political party. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.3, ¶8).

4. The State of Tennessee began using a government-printed ballot in 1889. From 1889 until 1961, any new or minor political parties that wished to be on the general election ballot in Tennessee merely had to nominate candidates by a convention, and notify the election officials of Tennessee in order to have the nominees of the political party placed on the November election ballot in Tennessee. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.4, ¶10).

5. In 1961, the Tennessee legislature changed Tennessee's law so that only political parties that had either polled 10 percent in the last election or which submitted a petition signed by five percent of the vote cast in the last election could appear on the Tennessee ballot. The 1961 change in Tennessee's election law referred to herein is found in the 1961 session laws, chapter 103, page 350 (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.4, ¶11).

6. Since the 1961 change in Tennessee's election law set forth in paragraph 5 hereinabove, the only times at which minor parties have appeared on the Tennessee ballot were

8

during the elections between 1968 and 1972 (when George Wallace's American Party qualified) and the temporary change in the Tennessee law for the election in 2000. George Wallace's American Party was so successful in the 1968 election in Tennessee that it came in second to the Republican Party's candidate, Richard Nixon, and ahead of the Democratic Party's candidate, Hubert Humphrey. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.4, ¶¶11 and 12).

7. Besides the success of obtaining ballot access on Tennessee's ballot of the American Party between 1968 and 1972, the only other time since 1961 when another political party, besides the Republican or Democratic parties, appeared on the ballot in Tennessee was in the 2000 election where the Tennessee legislature authorized a temporary procedure by which candidates who had used the independent procedure, but had polled 5,000 votes for the presidential candidates in 1996 as independents, could have the party label printed on the November 2000 ballot. The result of this temporary procedure provided by the Tennessee legislature only allowed the candidates of the Libertarian, Reform, and Green parties to have their party name next to their candidate's name in the 2000 election only—although the candidates were still listed under an "independent" heading. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.4, ¶12).

8. In 1972, the Tennessee legislature reduced the five percent petition requirement for ballot access for political parties to 2.5 percent, and the vote cast requirement from 10 percent to 5 percent. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶13).

9. Since 1972, many attempts have been made by minor political parties to qualify as political parties in Tennessee without success. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶¶14, 15, 16, 17, 18, and 19).

10. The Populist party tried to obtain political party recognition in Tennessee in 1989-1990, but was unsuccessful. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶15).

11. The Green party tried to obtain political party recognition in Tennessee in 1993-1994,

but was unsuccessful. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶16).

12. The Reform party tried to obtain political party recognition in Tennessee in 1995-1996, again in 1997-1998, and once again in 1999-2000, but was unsuccessful each time. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶17).

13. The Constitution party tried to obtain political party recognition in Tennessee in 1999-2000, again in 2001-2002, and a third time in 2003-2004, but each time was unsuccessful. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶18).

14. In each of the attempts to obtain political party recognition related in paragraphs numbered 10 through 13 above, as to the Populist, Green, Reform, and Constitution parties, several thousand signatures were obtained, but not a sufficient number to be successful under current Tennessee law. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶19).

15. Since the 2000 general election, Tennessee and Oklahoma are the only states in the Union in which no political parties, other than the Democratic and Republican parties, have appeared on the ballot. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.3, ¶6).

16. While the State of Ohio had no political parties, other than the Democratic and Republican parties, appearing on its state ballot in the period from 2002 through 2006, Ohio did have political parties other than the Democratic and Republican parties appear on its ballot in 2008, partly as the result of Ohio's ballot access law for minor parties being declared unconstitutional by the United States Court of Appeals for the Sixth Circuit, based in part on the fact that no minor political parties had managed to qualify for the Ohio state ballot since the 2000 election. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.3, ¶7).

17. Other than Tennessee, there is no other state in the United States that requires voters signing a petition for a new political party to be recognized that requires the voters to state that they are members of the political party. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶20).

18. Tennessee's requirement that registered voters who sign petitions for new party recognition must indicate that they are members of the new political party has been declared unconstitutional in every instance in which another state had a similar requirement, viz.: North Carolina, South Dakota, Nebraska, Nevada, New Mexico, and Kentucky. (Plaintiffs' Exhibit 1, Affidavit of Richard Winger, p.5, ¶20).

19. In the general election for 2008 in the State of Ohio, besides the Republican and Democratic parties, the Libertarian, Green, Socialist, and Constitution parties appeared on the Ohio ballot. (Plaintiff's Exhibit 3, Amended Expert Report of Richard Winger, p.4).

20. In the general election in 2008, the nominees of the Libertarian party for president or congress, or both, appeared on the ballot in all states with the party label, except Oklahoma, Maine, Tennessee, and West Virginia. However, in the November 2008 general election, the Green party appeared on the ballot in Maine and West Virginia, and the Constitution party appeared on the ballot in West Virginia. Thus, at least one of the three Plaintiff political parties in the instant case appeared on the ballot in all states in the November 2008 general election, except for Tennessee and Oklahoma. (Plaintiffs' Exhibit 3, Amended Expert Report of Richard Winger, pp.4-5).

21. Although no minor political parties appeared on the ballot in Oklahoma in the years 2002 through 2008, minor parties did appear on the Oklahoma ballot in 1980, 1984, 1988, 1992, 1996, 1998, and 2000—all years in which minor political parties did not appear on the ballot in Tennessee—with the special temporary exception in 2000 as noted in paragraph 7 above.. (Plaintiffs' Exhibit 3, Amended Expert Report of Richard Winger, p.4, n.1).

22. The Tennessee Attorney General issued a Memorandum dated September 17, 1984, saying § 2-1-104(28)(b), the definition of "political party" is unconstitutional. Further, in a letter from the Tennessee Elections Department, dated March 27, 1984, it is acknowledged that the aforesaid statute does not say when the new party petition is due. (Plaintiffs' Exhibit 3, Amended

Expert Report of Richard Winger, p.6-7).

### III. STANDARD OF REVIEW

A ballot access case requires the use of a standard of review which weighs the affects of the election law challenged. The United States Supreme Court has held in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) what the standard is to be used in determining whether election laws are unconstitutionally oppressive of potential voters' rights. The Supreme Court held that such constitutional challenges to specific provisions of a state's election laws cannot be resolved by any litmus-paper test that will separate valid from invalid restrictions, but rather that the Trial Court ". . . must resolve such a challenge by an analytical process that parallels its work in ordinary litigation." *Anderson* at 789. In a three-prong balancing test, the U.S. Supreme Court stated that the Trial Court must

> . . . first consider the character and magnitude of the asserted injury to the rights protected by the first and fourteenth amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interest put forth by the state as justifications for the burden imposed by its rules. In passing judgment, the court must not only determine legitimacy and strength of each of those interests; it also must consider the extent to which these interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional. *Anderson* at 789.

Under this test, the trial court must apply a level of scrutiny which varies on a sliding scale with the extent of the asserted injury to Plaintiffs' constitutional rights. When, at the low end of that scale, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, the 'State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)(quoting *Anderson v. Celebrezze*, 460 U.S. at 788, 788-789 n.9. But when the law places "severe" burdens on the rights of political parties, candidates or voters, "the regulation must be 'narrowly drawn to advance a state

12

interest of compelling importance.'" *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

Tennessee's challenged election laws for political party recognition burden "two different, although overlapping kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). Tennessee's challenged election laws also burden the fundamental "right of citizens to create and develop new political parties." *Norman v. Reed*, 502 U.S. at 288. As the United States Supreme Court has stated, "The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So, also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Williams v. Rhodes*, 393 U.S. at 31.

## IV. ARGUMENTS AND AUTHORITIES

The requirement set forth by Tennessee that a political party must obtain petition signatures of 2.5 percent of Tennessee voters who state that they are members of the unrecognized political party in order to get it recognized in Tennessee is unconstitutional. Similar requirements—especially as to requirements for party membership or pledges to vote for the political party--have been held unconstitutional in every state where the issue has come up. *Libertarian Party of Ohio v. Blackwell*, 462 F.3rd 579 (6th Cir. 2006); *Socialists Workers Party v. Hechler*, 890 F.2d 1303 (4th Cir. 1989); *Anderson v. Mills,* 664 F.2d 600 (6th Cir. 1981); *Workers World Party v. Vigil-Giron*, 693 F.Supp. 989 (D. N.M. 1988); *Libertarian Party of Nevada v. Swackhamer*, 638 F.Supp. 565

13

(D.Nev. 1986); *Consumer Party v. Davis*, 606 F.Supp. 1008 (E.D. Pa. 1985); *Libertarian Party of South Dakota v. Kundert*, 579 F.Supp. 735 (D.S.D. 1984); *Libertarian Party of Nebraska v. Beermann*, 598 F.Supp. 57 (D. Neb. 1984); *Fraenzel v. Secretary of Commonwealth*, 478 A.2d 903 (Pa. Commonwealth Ct. 1984); *North Carolina Socialists Workers Party v. North Caroline State Board of Elections*, 538 F.Supp. 864 (E.D.N.C. 1982); *Libertarian Party of Kentucky v. Ehrler*, 776 F.Supp. 1200 (E.D. Ky. 1991); and *Hall v. Austin*, 495 F.Supp. 782 (E.D. Mi. 1980). Considering the facts in the case at bar as applied to the Plaintiffs herein—especially in light of the early and vague deadline--this Court should declare the laws in question unconstitutional and enjoin their enforcement.

There is no question but that the individual states of the Union have a legitimate interest in regulating access to the election ballot so as to prevent fraud and confusion and to ensure an orderly election process. *American Party of Texas v. White,* 415 U.S. 767, 780-781 (1974); *Williams v. Rhodes*, *Id.* Indeed, the United States Supreme Court has spoken clearly on the "confusion and orderliness" legitimate State interest in holding that the State may insist that a political party appearing on the election ballot demonstrate a certain degree of community support. See *American Party of Texas v. White, Id*. It is undisputed that restrictions on access to the election ballot burden two distinct and fundamental rights, ". . . the right of individuals to associates for the advancement of political beliefs, the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes,* 393 U.S. at 30. "The freedom to associate as a political party, a right we have recognized as fundamental [*Williams v. Rhodes,* at 30-31], has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because, absent recourse to

14

referendums, 'Voters can assert their preferences only through candidates or parties or both,' *Lubin v. Panish*, 415 U.S. 709, 716 (1974); "*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, at 184 (1979).

It is the contention of the Plaintiffs urging this lawsuit that the State of Tennessee has gone too far in infringing the Plaintiffs' rights to political association and ballot access. The teaching of the United States Supreme Court is that:

> "even when pursuing a legitimate interest, a State may not choose means that **unnecessarily restrict** constitutionally protected liberty," *Kusper v. Pontikes*, 414 U.S. 51, 58-59 . . . (1973), and we have required that states adopt the **least drastic means** to achieve their end. *Lubin v. Panish, supra*, at 716 . . .; *Williams v. Rhodes, supra*, at 31-33 . . . **This requirement is particularly important where restrictions on access to the ballot are involved.** The states' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the development of the nation. [emphasis added] *Illinois State Board of Elections v. Socialist Workers Party, Id.,* at 185.

"As our past decisions have made clear, the significant encroachment upon associational freedom cannot be justified upon a mere showing of a legitimate state interest [citations omitted]. If the state has open to it a least drastic way of satisfying its legitimate interest, it may not choose a legislative scheme that broadly stifles the exercise of fundamental liberties. *Shelton v. Tucker*, 364 U.S. 479 [1960]." *Kusper v. Pontikes,* 414 U.S. at 58-59. In deciding what the "least drastic or restrictive means," is, it is necessary for the Court to ". . . consider the facts and circumstances behind the law, the interest which the state claims to be protecting, and the interests of those who are disadvantaged by the classification." *Storer v. Brown*, 415 U.S. 724, at 730 (1974), citing *Williams v. Rhodes, Id.* and *Dunn v. Blumstein*, 405 U.S. 330 (1974). Also see, *Mandel v. Bradley*, 432 U.S. 173 (1977); *McLain v. Meier*, 637 F.2d 1159 (8th Cir. 1980); and *Libertarian Party of Ohio v. Blackwell*, *Id.*. In such a regard, it is interesting to look at the history of ballot

15

access in Tennessee.

The election laws challenged in the instant case for recognition of new political parties in Tennessee have not been able to be complied with by any new political parties for four decades. Election laws for party recognition which have prevented political parties from attaining ballot access in a state over a significant period of time have been held to be unconstitutional. *McLain v. Meier*, *Id.*; *Blomquist v. Thomson*, 591 F.Supp. 768 (D.Wyo. 1984); and *Blomquist v. Thomson*, 739 F.2d 525 (10th Cir. 1984). Considering the history of Tennessee's election laws and the lack of success of minor parties in obtaining ballot access in Tennessee since the American Party did so in 1968, Tennessee's ballot access for minor political parties is the most restrictive in the United States. Statutory schemes for ballot access in Tennessee impede the ability of political parties other than the Democrats and the Republicans to place their candidates on the ballot with the party label and otherwise enjoy the benefits of State recognition as an organized political party. Tennessee's ballot access laws have, in effect, frozen the status quo to a large extent and adversely affected minority political rights.

In judging the constitutionality of ballot access laws, a Court should consider the historical election experiences and data of the state in question. *American Party of Texas v. White, Id.; Storer v. Brown, Id.*; *Williams v. Rhodes, Id.*; *McLain v. Meier, Id.* As the United States Court of Appeals for the Eighth Circuit said in the *McLain* case, ". . . our decision is influenced by the experience of other third party groups, which have not been particularly happy in North Dakota . . . . Here, the record shows that third parties have not qualified for ballot positions in North Dakota with regularity, or even occasionally. The American Party is apparently the only third party to field party candidates in the past three decades." [*McLain v.*

16

*Meier,* 637 F.2d at 1165.] Similarly, considering that no minor political parties in the last forty-two years have made it on the Tennessee ballot by petition, it is obvious that Tennessee is in a similar position or worse than that of North Dakota in regard to the use of historical election statistics and data and their bearing on the election laws in question in Tennessee today.

Of course, candidates affiliated with nonrecognized political parties in Tennessee have an option of appearing on the ballot without their political party label. However, not only does this option not inform and educate the Tennessee voter as to who the candidate is actually affiliated with, but it also is not a proper substitute for a nonrecognized political party candidate. The United States Supreme Court has stated that "The political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown,* 415 U.S. at 745. It might well be wondered if Tennessee ". . . is willing to encourage minority political voices, but only if they are partially stripped of a legitimizing party label." *McLain v. Meier,* 637 F.2d at 1165, n.12. "A candidate who wishes to be a party candidate should not be compelled to adopt Independent status in order to participate in the electoral process." *McLain v. Meier*, 637 F.2d at 1165.

As the United States Supreme Court has stated in regard to ballot access laws:

> A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties . . . . By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity in competition in the marketplace of ideas. Historically, political figures outside the two major parties have been fertile sources of new ideas and new programs; many other challenges to the status quo have

17

> in time made their way into the political mainstream. . . . In short, the
> primary values protected by the First Amendment--"a profound national
> commitment to the principle that debate on public issues should be
> uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan*,
> 376 U.S. 254, at 270 (1964)—are served when election campaigns are
> not monopolized by the existing political parties. *Anderson v. Celebrezze*,
> 460 U.S. at 793-794.

Tennessee's ballot access laws for new political parties has constitutional problems beyond the vague and early petition filing deadline and the party affiliation requirement for petition signers. It should be considered that among the 49 states in which political parties nominate candidates for public office, 46 permit a new political party to place a nominee for all statewide partisan offices on the November ballot with the support of two percent or less. In fact, not only do nearly two-thirds of the states have petition requirements of one percent or less, but only Tennessee, Alabama, and Oklahoma in the entire United States have a petition signature requirement which requires a new political party in order to place a full slate of candidates for statewide office on the November ballot to have support of more than two percent of the last vote cast.

Tennessee's requirement is two and one-half percent of the last gubernatorial vote, Alabama's requirement is three percent of the last gubernatorial election, while Oklahoma's requirement is five percent of the vote from the last general election—viz.: either President or Governor. However, the reason Alabama and Oklahoma's requirements are constitutional and Tennessee's is constitutionally questionable is the fact that while Alabama and Oklahoma do not require the petition signers to state they are members of the unrecognized political party, do not even require the petition signers to say they will vote for the new party and its candidates, and allow individual petition signers to sign as many different petitions for new political parties as

they wish, Tennessee forces the petition signers to say they are members of a political party which is at the time unrecognized by the State of Tennessee.

While Tennessee's two and one-half percentage requirement for signatures is near the highest percentage required in the United States, Tennessee's percentage requirement standing alone is not unconstitutional. What makes Tennessee's political party requirement unconstitutional is the party affiliation requirement for the petitions which forces voters who might wish to have the party recognized in Tennessee to become members of the party before it is even recognized. As was stated above, no other state has been successful in constitutionally defending a similar law. As was noted in statement number 22 hereinabove of the Concise Statement of Material Facts to Which No Genuine Issue Exists, even the Tennessee Attorney General's office recognized in a memorandum back on September 17, 1984, that there was a constitutionality problem with new political party recognition, while the Tennessee elections department on March 27, 1984, acknowledged that there wasn't a specific date given when the new party petition is due. Further, the election history of Tennessee in the last 42 years indicates that the challenged election laws herein have frozen the political status quo in Tennessee and protected the two major parties from competition from minor political parties whose candidates can only appear on the Tennessee ballot if they are denied their preferred political party label. The Tennessee election laws for new political party formation challenged herein are unconstitutional.

WHEREFORE, premises considered, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Summary Judgment.

19

Respectfully submitted this 15th day of January, 2010.

/s/ James C. Linger
JAMES C. LINGER, OBA#5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com

/s/ Darrell L. Castle
DARELL L. CASTLE, TNB No. 6863
Darrell L. Castle & Associates
3100 Walnut Grove, Suite 610
Memphis, TN 38111
(901) 327-2100
(901) 458-9443 Facsimile
dlc2586@aol.com

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of January, 2010, a true and correct copy of the above and foregoing motion was served upon:

JANET KLEINFELTER,
Senior Counsel
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
janet.kleinfelter@state.tn.us
*Counsel for Defendants*

/s/ James C. Linger
James C. Linger, OBA No. 5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com
*Counsel for Plaintiffs*