IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LIBERTARIAN PARTY OF TENNESSEE, )
ANTHONY WALL, GREEN PARTY OF )
TENNESSEE, KATHLEEN A. CULVER, )
CONSTITUTION PARTY OF )
TENNESSEE and JOAN CASTLE, )
           )
   Plaintiffs, )
           )
v. )   Case No. 3:08-0063
           )   Judge Haynes
MARK GOINS, Coordinator of )
Elections for the State of Tennessee, and )
TRE HARGETT, Secretary of State for the )
State of Tennessee, )
           )
   Defendants. )

**PLAINTIFFS' MEMORANDUM BRIEF AND RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. STATEMENT OF THE CASE

The instant case is a ballot access case which challenges certain election laws of Tennessee

which govern the recognition of new political parties. Plaintiffs are registered voters and

unrecognized political parties in the State of Tennessee. Tennessee law requires a new political

party to submit petitions signed by registered voters in the State of Tennessee who assert they are

members of the political party in a number equal to at least 2½ percent of the last vote in the

governor's race in Tennessee and by a deadline which is not specifically stated in statute, but has

been admitted by the Defendants to be the first Thursday in March (Affidavit of Mark Goins,

Defendants' Exhibit A, p. 3, ¶ 6). While the Affidavits signed by Mr. Goins (Defendants' Exhibit

A), Brook Thompson, (Defendant's Exhibit "B"), and Beth Henry-Robertson (Defendant's Exhibit

"C") indicate that a voter's signature on a petition has never been rejected because it did not indicate the voter's party affiliation, nor would it be rejected on such grounds, the clear statement of the pertinent section of the Tennessee election code requires that "the political party must have a membership equal to at least 2½ percent of the total number of votes cast for gubernatorial candidates in the most recent election for governor as shown by petitions to establish a political party filed with the coordinator of elections and signed by registered voters as members of the party and certified as to registration of the signers by the county election commissions of the counties where the signers are residents. (TCA, Election Code, § 2-1-104(a)(30)(B), effective January 1, 2009, Acts 2008, ch. 1108, § 7; formerly TCA, Election Code, § 2-1-104(a)(29)(B)[1].

While the bold disregard of Mr. Goins, Mr. Thompson, and Ms. Robertson, for the Tennessee election laws is remarkable, the fact of the matter is that no new political party has submitted a sufficient number of signatures in the last 42 years for the State of Tennessee's election officials to even count and certify. In fact, Mr. Goins has only been in his present position as Tennessee Secretary of State since February 11, 2009, Mr. Thompson served as Coordinator of Elections from November 1995 until February of 2009, and Ms. Robertson has held her position as Assistant Coordinator of Elections for Tennessee since 1995. As indicated by the evidence in the case at bar, while a number of attempts have been made by unrecognized political parties in Tennessee, never has a political party had sufficient numbers of petition signatures to reach the threshold of 2½ percent so that the issue of the party membership of the petition signers could come up. The fact of the matter is that the Tennessee election law clearly states that party membership is

---

[1]   The above election statute was designated as § 2-1-104(a)(29)(B) at the time Plaintiffs filed their Complaint on January 23, 2008, and at the time Defendants filed their Answer on March 25, 2008. Further, the same section is used in the Exhibit "1" attachment "Formation of a Statewide Political Party" attached to Defendants' Exhibit "C", Affidavit of Beth Henry-Robertson, filed herein in support of Defendants' Motion for Summary Judgment on January 15, 2010. In any event, § 2-1-104(a)(29)(B) is the same wording as renumbered § 2-1-104(a)(30)(B).

2

required and the answer filed by the Defendants in the instant case on March 25, 2008, stated in pertinent part in paragraph V, VI, and VII, that the statutes challenged by the Plaintiffs ". . . speak for themselves and are the best evidence of what the statutes provide."

On February 4, 2009, the Court granted the Suggestion to Substitute Tre Hargett, Secretary of State for the State of Tennessee, for Riley Darnell, former Secretary of State for the State of Tennessee, as a party Defendant. On September 2, 2009, a Joint Motion for Extension of Time to Complete Discovery and File Dispositive Motions was filed and granted by the Court. Part of the reason for the aforesaid Joint Motion was that Counsel for the Defendants had been following various legislative proposals in the Tennessee legislature which could have significantly changed either the defense of the case at bar or resulted in a possible settlement. (Joint Motion, ¶ 4). Both Plaintiffs and Defendants filed a Motion for Summary Judgment with supporting Brief on January 15, 2010. On January 28, 2010, a Joint Motion for Extension of Time to File Response to Summary Judgment Motions was filed by both parties, and, on February 2, 2010, the Court granted the parties' request to extend the time to file their responses to the summary judgment motions until February 16, 2010. Also, on February 2, 2010, the Court granted the Amended Suggestion to Substitute Mark Goins, Coordinator for Elections for the State of Tennessee, for Brook Thompson, former Coordinator of Elections for the State of Tennessee, as a party Defendant.

In Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment, Defendants set forth a statement of 55 undisputed facts. Three of the facts set forth in Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment are immaterial and partly disputed by Plaintiffs hereinbelow, while an additional 10 undisputed facts set forth by Defendants are disputed by Plaintiffs. The remaining 42 undisputed facts in

3

Defendants' aforesaid statement, while admitted by Plaintiffs, are insufficient alone to justify summary judgment for Defendants.  Plaintiffs now submit their Memorandum Brief in Opposition to Defendants' Motion for Summary Judgment.

## II.    CONCISE STATEMENT OF MATERIAL FACTS TO WHICH THE PLAINTIFFS ASSERT GENUINE ISSUES OF FACT EXIST

The Plaintiffs admit the allegations contained in Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment which are numbered 1, 3-4, 6-9, 11-13, 16-17, 21-24, 26-36, 38, 40, and 42-54.   Plaintiffs assert that the following facts put forth by the Defendants are incorrect, immaterial, and/or a genuine issue exists thereto.  Plaintiffs  contest the materiality and specific correctness of Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment which are numbered 5, 14, and 15.  Further, the Plaintiffs assert that there is a genuine issue existing as to Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment which are numbered 2, 10, 18-20, 25, 37, 39, 41, and 55.  These alleged undisputed facts by Defendants are specifically denied by Plaintiffs.  In disputing the following specific facts, Plaintiffs will refer to the numerical designation used in Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment in Plaintiffs' separate Response to Statement of Undisputed Facts as required by Local Rule 56.01(c).  Plaintiffs will also refer to documents, transcripts, pleadings, affidavits, and exhibits, which are part of the record in the case at bar.

## III.  ARGUMENT AND AUTHORITIES

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

There is no question as to the appropriate standard for a trial court to apply in deciding a motion for summary judgment.  The trial court should ". . . grant summary judgment if there is no

4

genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); also see Fed.R.Civ.P. 56(c). However, the trial court should remember ". . . at the summary judgment stage the Judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249. In essence, the inquiry for the trial court is ". . . whether there is the need for a trial. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250. In reviewing the evidence and record supporting and opposing the summary judgment motion, the trial court must view all facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In general a summary judgment should not be granted on an issue, the resolution of which is dependent upon another issue which itself raises genuine questions of material fact." *Sonobond Corp. v. Uthe Techology, Inc.,* 314 F.Supp. 878, 882 (N.D. Cal. 1970). In fact, the ". . . necessity of expert testimony to translate and interpret material, technical facts is a justifiable ground for denying summary judgment." *Sunobond Corp. v. Uthe Technology, Inc.,* 314 F.Supp. at 881.

PROPOSITION I.

PLAINTIFFS LPT AND GPT HAVE STANDING TO CHALLENGE THE CONSTITUTIONALITY OF TENNESSEE'S STATUTES FOR OBTAINING RECOGNITION AS A STATEWIDE POLITICAL PARTY.

Defendants question the standing of the Libertarian Party of Tennessee (LPT) and the Green Party Tennessee (GPT) in the instant case under Article III of the U.S. Constitution. The basis of the Defendants' assertion is the correct statement that the Libertarian Party has never attempted a petition drive in Tennessee and the incorrect statement that the Green Party has never made an

5

attempt in Tennessee. While the Plaintiff Kathleen Culver was only peripherally involved with the GPT in 1993 and 1994 when they made an unsuccessful effort to obtain ballot status in Tennessee, she was clear that the party had ". . . limited resources in collecting petition signatures that require the signers to attest to being members of a not-yet-in-existence party is a foolhardy and a futile exercise." (Defendants' Exhibit "K", Green Party of Tennessee's Response to Defendants' Interrogatories, p. 9, Answer to Interrogatory No. 6(d)). Specifically, the GPT in its 1993 petition drive collected 1,000 signatures by May 1993, but became discouraged and made no further headway. (Plaintiffs' Exhibit "3", Amended Expert Report of Richard Winger, p. 6). Further, in discussing the wording to be put on petitions in 2001 and 2003, the ". . . Secretary of State office was evasive and unhelpful and refused to offer acceptable language nor confirm whether specific language on the petitions would be accepted. They insisted we had to collect the signatures first, then they would tell us if the wording on our petition was adequate." (Defendants' aforesaid Exhibit "K", p. 11, Answer to Interrogatory No. 10(a)).

On the other hand, the LPT, while never conducting a petition drive themselves to obtain party status, did have the examples of previous failed Tennessee attempts by the Populist Party in 1989-1990, the Green Party in 1993-1994, the Reform Party in 1995-1996, again in 1997-1998, and once again in 1999-2000, and the Constitution Party in 1999-2000, again in 2001-2002, and a third time in 2003-2004. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 5, ¶¶ 14, 15, 16, 17, 18, and 19). The failed attempts by the Populist, Green, Reform, and Constitution parties in Tennessee resulted in several thousand signatures being obtained, but never in a sufficient number to be successful under Tennessee law. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 5, ¶ 19). Thus, the Secretary of State and Coordinator of Elections for the State of Tennessee had never had

6

the opportunity to actually have a petition with a legally sufficient number of signatures on petitions to form a new political party in Tennessee. It is particularly important to consider the Green Party's statement about the evasiveness and unhelpfulness of the Secretary of State's office as to the wording on their petitions in contrast to the clear statements now made by election officials in Tennessee in Defendants' Exhibits "A", "B", and "C" that they would never turn down a petition for failure to state the membership of the petition signers. Thus, it is obvious the Libertarian and Green Plaintiffs in the instant case have suffered actual or threatened injury because of the petition signature requirement for new political parties in Tennessee which requires the signers to state they are party members and the vague and early deadline for the filing of said petitions.

However, Plaintiffs admit that neither the Libertarians nor Greens have submitted petitions to obtain party recognition for the current election cycle. Nonetheless, as stated in Plaintiffs' Brief in Support of their Motion for Summary Judgment, the Plaintiffs are not seeking to be put on the Tennessee ballot as recognized political parties at this time, but are rather simply challenging the vague and early deadline for petition signatures, the mandatory language for party membership of petition signers, coupled with the relatively severe requirement of 2½ percent of the last gubernatorial vote in Tennessee. A continuation of the membership requirement (even though certain members with the offices of Secretary of State and Coordinator of Elections for Tennessee don't seem to be inclined to enforce it) constitutes a continued barrier and chilling effect on future attempts to obtain the necessary petitions to gain new party recognition in Tennessee.

The continued existence of the membership requirement coupled with the petition signature percentage and the vague, early deadline is fairly traceable to the Defendants, with the resulting injury to the Plaintiffs likely to be redressed by the relief requested in this declaratory judgment

7

action.  Such a finding was specifically made by the United States District Court for the Eastern

District of Kentucky in the case of *Libertarian Party of Kentucky v. Ehrler*, 776 F.Supp., 1200, at

1202 (E.D. Ky., 1991).  In the *Ehrler* decision, no attempt had been made by the Plaintiffs to

petition.  In fact, the *Ehrler* decision noted that in another case the Socialists Labor Party had been

granted standing to challenge Ohio's restrictions on minor party access to the election ballot,

including the petition signature requirement, even though the Plaintiff had not filed any petition

signatures at all.  *Williams v. Rhodes*, 393 U.S. 23 (1968); also see, *Storer v. Brown*, 415 U.S. 724

(1973), which allowed independent presidential and vice presidential candidates to have standing to

challenge California's restrictions on independent candidate ballot access, even though they had not

filed any petition signatures; *Stephenson v. State Bd. of Elections*, 794 F.2d 1176 (7th Cir. 1986),

which allowed an independent presidential candidate to have standing to challenge Illinois' early

filing deadline even though he had not submitted any petition signatures; and *Rainbow Coalition of

Oklahoma v. Oklahoma State Election Bd.*, 844 F.2d 740 (10th Cir. 1988), which permitted minority

parties who contested Oklahoma's petition requirements and filing deadline for third parties to have

standing even though they had not attempted to comply with the statutes.

It is clear that the LPT and GPT Plaintiffs have standing in the instant case and the

Defendants' Article III standing argument is without merit.  Particularly is such a conclusion

warranted when you consider the foregoing cases and the fact that Plaintiffs' expert witness is of

the opinion that ". . . it would be nearly impossible for any minor political party to obtain ballot

access in Tennessee by petitioning if the current petition deadline requirement and party

membership requirement for the petition are retained." (Plaintiffs' Exhibit "4", Affidavit of Richard

Winger of February 8, 2010, p. 4, ¶ 12).

PROPOSITION II.

TENNESSEE'S BALLOT ACCESS MEMBERSHIP REQUIREMENT FOR
SIGNERS OF PETITIONS FOR THE RECOGNITION OF NEW POLITICAL
PARTIES IS UNCONSTITUTIONAL.

As noted previously, Tennessee Code Ann., Election Code, § 2-1-104(a)(30)(B), formerly

§ 2-1-104(a)(29)(B), requires people to assert that they are members of a nonrecognized political

party when it seeks recognition in the State of Tennessee. Specifically, the words of the statute

state that in obtaining the signatures, the petition must be ". . . signed by registered voters as

members of the party . . . ." Defendants take the unique position that no petitions for new party

recognition in Tennessee have ever been turned down for not having the proper membership of

signers and that petitions for new party recognition would never be turned down for that reason.

However, in their answer to Plaintiffs' Complaint filed herein on March 25, 2008, Defendants

clearly stated in paragraphs V, VI, and VII of their answer that the statutes complained of by

Plaintiffs ". . . speak for themselves and are the best evidence of what the statutes provide . . . ."

As has been demonstrated hereinabove, the Plaintiffs Green and Constitution parties in

Tennessee have attempted petition drives. Further, other nonrecognized parties in Tennessee (such

as the Reform and Populist parties) have also attempted unsuccessfully to petition for new party

status in Tennessee. (See Plaintiffs' Exhibit "1", Affidavit of Richard Winger, pp. 4-5, ¶¶ 12, 14,

15, 16, 17, 18, and 19). The fact that no new political party has been recognized in Tennessee since

the American Independent Party successfully petitioned in 1968, should be some indication of the

difficulty and near impossibility of Tennessee's ballot access laws for new political parties. As

recognized in the cases cited by Plaintiffs in their Memorandum Brief in Support of their Motion

for Summary Judgment, the experience of other minor parties over a period of time is a good

9

indication of the constitutionality of a state's ballot access laws. *McLain v. Meier*, 637 F.2d 1159, 1165 (8th Cir. 1980).

While Defendants seek to distinguish the numerous cases which have knocked out different types of party membership or registration change requirements for petitions seeking new party recognition, Defendants fail to give an example of even a single state which has upheld such an election law. It is significant to note that no other state in the United States, except Tennessee, requires voters signing a new political party recognition petition to state that they are members of the political party. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 5, ¶ 20). Requiring a new political party before it is recognized to obtain petition signatures reflecting party membership of the signers of 2½ percent is indeed a severe burden for new political parties.

Each of the parties involved in the instant case have few states in which their party membership is in excess of 2½ percent. For the Libertarian Party, only in Alaska do they have at least 2½ percent of the last total vote for governor. For the Green Party, only in the State of Maine do they have a membership of at least 2½ percent of the last vote for Governor. For the Constitution Party, only in the States of California and Nevada—under a different name in those states—has the Constitution Party achieved a membership of at least 2½ percent of the last total vote for Governor. (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, pp. 3-4, ¶¶ 8, 9, and 10, respectively). Considering the smaller membership of minor political parties in other states coupled with the success of minor parties such as the Libertarian, Green, and Constitutional in achieving ballot access in most states (Plaintiffs' Exhibit "3", Amended Expert Report of Richard Winger, pp. 4-5), Tennessee's ballot access scheme is constitutionally suspect. Only in Oklahoma and Tennessee have the Libertarian, Green, Constitution, and/or other minor

parties not been on the ballot with their party label in the last election in 2008. However, the ballot access history of minor political party recognition in Oklahoma stands in stark contrast to Tennessee in that minor political party candidates did appear on the Oklahoma ballot with the political party's label in 1980, 1984, 1988, 1992, 1996, 1998, and 2000. (Plaintiffs' Exhibit "3", Amended Expert Report of Richard Winger, p. 4, n. 1).

It may well be that the current employees of the Tennessee Secretary of State and Coordinator of Elections do not intend to enforce the membership requirement for petitions for recognition of new political parties in Tennessee because of the memorandum from the Attorney General's office back on September 17, 1984, and the letter to Plaintiffs' Expert Witness, Richard Winger, dated March 27, 1984, which recognized the requirement that petition signers be members of the party and further state that there is no specific filing deadline for the petitions in Tennessee. (Plaintiffs' Exhibit "3", Amended Expert Report of Richard Winger, Opinion 4, and attachments thereto). While many of the cases cited by the Plaintiffs and Defendants which found the unconstitutionality of the party membership requirements for petitions for new political parties are in states where voters may register as members of political parties, Tennessee and the State of Ohio have no voter registration by political party.

In regard to the "membership" requirement of Tenn. Code Ann. § 2-10-104(a)(30)(B), the Defendants do not argue that such a requirement has ever been upheld or is currently in existence in any other state, but rather seek to distinguish cases which they anticipate the Plaintiffs will rely on where similar membership requirements have been struck down. Specifically, Defendants cite the cases of *Anderson v. Mills*, 664 F.2d 600 (6th Cir. 1981); *Socialists Workers Party v. Heckler*, 890 F.2d 1303 (4th Cir. 1989); *Workers World Party v. Vigil-Giron*, 693 F.Supp. 989 (D.N.M. 1988);

11

*Libertarian Party of Nevada v. Swackhamer*, 638 F.Supp. 565 (D. Nev. 1986); *Libertarian Party of Nebraska v. Beermann*, 598 F.Supp. 57 (D.Neb. 1984); *Libertarian Party of South Dakota v. Kundert*, 579 F.Supp. 735 (D.S.D. 1984); and *North Carolina Socialist Workers Party v. North Carolina State Bd. of Elections*, 538 F.Supp. 864 (E.D.N.C. 1982). Defendants seek to distinguish the foregoing cases by noting that unlike the State of Tennessee where registered voters do not register by political party, the states involved in the foregoing cases either require the voters to change their party registration to the new party, pledge to support the new party, or state that they intend to nominate candidates for elective office and/or vote for the nominees of the new party. (Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, pp. 24-26).

In addition to the foregoing cases which Defendants anticipated Plaintiffs would use in their Brief, the Plaintiffs cited the additional cases of *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006); *Consumer Party v. Davis*, 606 F.Supp. 1008 (E.D. Pa. 1985); *Fraenzel v. Secretary of Commonwealth*, 478 A.2d 903 (Pa. Commonwealth Ct. 1984); and *Hall v. Austin*, 495 F.Supp. 782 (E.D. Mi. 1980). While most states do allow individual voters to choose if they wish to register as a member of a political party, many states do not have such a requirement, e.g., Ohio and Tennessee. However, changing a voter's political party registration from one party to another if permitted, or stating that the voter will be a member of the party or support and vote for the party's candidates, are all simply different ways to establish membership in the party. Obviously, in states like Tennessee and Ohio, where voters cannot register to vote as members of a political party, one way to establish membership in a party is by the voter signing a petition which states that the voter is a member of the party which wishes to establish itself. The distinction argued by Defendants is more apparent than real and significant. In each case—whether there is political party registration

12

for voters or not—the voter is required to make some sort of choice committing him or herself to be a member of the new political party. Such a requirement has been found to impact on rights of political association, First and Fourteenth Amendment freedoms, and has been condemned in every case in which it has come up.

In the *Kundert* case, the District Court for South Dakota even found that the election law in question unduly burdened the Plaintiffs' Constitutional protected right of reasonable access to the ballot based largely on the experience of minority parties in South Dakota which had not been able to achieve ballot status in the previous 52 years. In contrast, the South Dakota District Court noted that other states, such a Minnesota, Montana, and Colorado, allowed nominating petitions to simply affirm the voters' desire to have the new party placed on the ballot. *Libertarian Party of South Dakota v. Kundert*, 579 F.Supp. at 739. *Kundert* went on to note that other states, viz.: North Dakota, Florida, and Texas did not require petition signers to declare anything other than their desire that the new party have a place on the ballot. This is particularly interesting since the States of Minnesota, North Dakota, and Texas (like Ohio and Tennessee) do not provide for registration of voters by political party. *Libertarian Party of South Dakota v. Kundert*, *Id.* (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, p. 4, ¶ 13). While the State argued in *Kundert* that alternative independent ballot access was an adequate substitution for an unduly burdensome ballot access restriction imposed on new political parties, the District Court in *Kundert* noted that both the Eighth Circuit Court of Appeals and the Supreme Court of the United States had held that

> A candidate who wishes to be a party candidate should not be compelled to adopt independent status in order to participate in the electoral process. As the Supreme Court has recognized, "the political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown*, 415 U.S. 724, 745 (1974), *McLain v. Meier*, 637 F.2d 1159, 1165 (8th Cir. 1980); *Libertarian Party of South Dakota v. Kundert*, *Id.*

13

The District Court for New Mexico noted that the election law in question required only 500 signatures on the petition for a new party which required a declaration that the signers were members of the political party submitting the petition. *Workers World Party v. Vigil-Giron,* 693 F.Supp. at 991. While the Court in *Vigil-Giron* noted that the Supreme Court had upheld certain petition requirements if the petition did not require the voter to state that he intended to vote for the candidate at the next election and could sign the petition even if he had voted in a party primary, the District Court stated that a different conclusion might have been reached had the petition also required party membership or allegiance. *Workers World Party v. Vigil-Girpn*, 693 F.Supp. at 996, citing *Jenness v. Fortson*, 403 U.S. 431, at 439 (1971). While the District Court in *Vigil-Giron* additionally made reference to the Sixth Circuit case of *Anderson v. Mills, Id.*, *Libertarian Party of Nevada v. Swackhamer, Id.*, and *Libertarian Party of Nebraska v. Beermann, Id.*, the Court went on to find that ". . . the fact that five hundred people decided to sign their names to a party's petition for access to the ballot is sufficient to demonstrate significant interest in and commitment to the new party." To impose the additional requirement that those 500 signatories formally declare their membership in the party is merely to impose an unnecessary burden on those signatories' First Amendment rights. *Workers World Party v. Vigil-Giron*, 693 F.Supp. at 997. Since the Affidavit submitted by the Defendants as Exhibits "A", "B", and "C" to their Motion for Summary Judgment seemed to indicate that the election employees of the State of Tennessee at present have no intention of enforcing any sort of membership requirement, it would seem that the Defendants believe that Tennessee's membership requirement is an "unnecessary burden" also. In fact, other courts have held burdensome requirements unconstitutional when the requirement was unnecessary to achieve any state purpose. "It is clear that the Supreme Court has consistently required a

14

showing of necessity for significant burdens on ballot access." *Anderson v. Celebrezze*, 460 U.S. 780, at 789 (1983); Storer v. Brown, 415 U.S. at 743; and *Pilcher v. Rains*, 853 F.2d 334 (5th Cir. 1988), which found that the voter registration number was no longer necessary for petitioning for new party ballot access.

Other cases mentioned by both Plaintiffs and Defendants make similar observations: "The showing of public support may be made by ordinary petitions lacking a disaffiliation provision, as is evidenced by the state's use of ordinary petitions in the case of independent candidates. *North Carolina Socialists Workers Party v. North Carolina State Board* Elections, 538 F.Supp. at 867.

> Any requirement that SWP supporters publicly identify themselves not only as supporters of particular SWP candidates but as members of the party would gravely burden the freedom of association guaranteed by the First and Fourteenth Amendments to the United States Constitution. *Fraenzl v. Secretary of Commonwealth of Pennsylvania*, 478 A.2d at 906, citing *Brown v. Socialists Workers '74 Campaign Committee*, 459 U.S. 87 (1982).

As the Sixth United States Court of Appeals said in reviewing a similar Kentucky law, ". . . we are convinced that the provision is impermissible because it imposes an unnecessary burden on voting and associational rights, in violation of the Equal Protection Clause." *Anderson v. Mills*, 644 F.2d at 609.

While some of the cases which have invalidated various forms of party membership requirements for petitions to form new political parties in various states had rather small petition signature numbers, Tennessee's is significantly higher at 2½ percent of the last total vote for governor in Tennessee. In contrast, while Ohio is a significantly bigger state than Tennessee, its petition signature requirement for a state which also does not have political party registration but with an earlier deadline, required 32,290 signatures—which amounted to only one percent of the total vote cast in the previous election. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d at 583.

15

Similarities between Ohio and Tennessee are the facts that in 2006, Ohio, like Tennessee, required all political parties, including minor political parties, to nominate their candidates at primary elections, allowed automatic qualification for a political party if its candidate in the previous gubernatorial election had received at least five percent of the vote, and required all other political parties to file a petition no later than 120 days prior to the date of the primary election. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d at 582-583.

However, while Ohio's petition signature requirement was one percent of the last vote for governor, Tennessee's is 2½ percent of the last vote for governor. There are, of course, other distinctions between Ohio and Tennessee in comparing the *Blackwell* case to the case at bar. Ohio had at least averaged one minor political party on its ballot from 1992 to 2002, while the seven other of the eight most populous states compared to Ohio had averaged four minor political parties on the ballot each year from 1992 to 2002. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d at 589. While the Sixth Circuit noted in *Blackwell* that Ohio had not had any minor political parties qualifying for ballot in any race in 1992, 1994, 2002, and 2004, *Libertarian Party of Ohio v. Blackwell*, *Id.*, it is significant to look at the stark contrast with the situation in Tennessee with no new political parties having successfully been able to petition in Tennessee since 1968.

The evidence in the instant case is similar to the evidence in the Sixth Circuit *Blackwell* decision in that the ". . . evidence in the record shows that in Ohio, elections have indeed been monopolized by two parties, and thus, the burdens imposed by the state's election laws are 'far from remote'." *Libertarian Party of Ohio v. Blackwell, Id.*, citing *California Democratic Party v. Jones*, 530 U.S. 567, at 578 (2000). The record of other minor parties in the instant case (not just the Constitution and Green Parties of Tennessee, but also the Reform and Populist Parties), while

16

not conclusive in and of itself, has been stated by the U.S. Supreme Court that ". . . a historical record of parties and candidates being unable to meet the state's ballot-access requirements is a helpful guide in determining their constitutionality." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d at 590, citing *Storer v. Brown*, 415 U.S. 724, at 742 (1974) and *California Democratic Party v. Jones*, 530 U.S. at 785. Thus, the Sixth Circuit in *Blackwell* held that Ohio's system for recognizing minor political parties imposed a severe burden on associational rights. *Libertarian Party of Ohio v. Blackwell*, *Id.*

PROPOSITION III

THE COMBINED EFFECT OF THE SIGNATURE PETITION PERCENTAGE REQUIREMENT OF TWO AND ONE-HALF PERCENT OF TENN. CODE. ANN. § 2-1-104(a)(30)(B) TIED IN WITH THE EARLY AND VAGUE FILING DEADLINE AND THE MEMBERSHIP REQUIREMENT IS UNCONSTITUTIONAL.

Defendants seek in their Brief to separate the membership requirement of the statute in question from the signature percentage requirement of 2 ½ percent and the early and vague petition deadline. Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, p. 28, n. 20, suggests that the Court could simply sever the membership language from Tenn. Code Ann. § 2-1-104(a)(30)(B). As it has been noted before, the Defendants do not seem to think the membership requirement is important enough to defend or enforce, and simply recognize its unnecessary and unconstitutional nature. However, Defendants are correct that a petition signature requirement of 2 ½ percent of the last vote for governor would not be in and of itself unconstitutional. However, a vague and early petition filing deadline of in effect 150 days before the primary tacked onto a membership requirement renders the law unconstitutional. It is not necessary for the Court to decide in the instant case at this time what specifically the Legislature should do in reforming the law. It is simply enough, as is asked by the Plaintiffs, to declare the law

17

unconstitutional for the reasons asserted herein and issue an injunction against its enforcement. The Legislature can then decide to remove the membership requirement, put a specific date for a filing deadline, and consider whether there is a necessity of having a 2½ percent signature requirement.

While it is true as noted by Defendants that petition requirements of as high as five percent have been upheld, still the overwhelming majority of states have requirements significantly below 2½ percent,[2] and the Court of Appeals in Oklahoma (the only other state besides Tennessee to not have third parties on the ballot in the last presidential election) specifically noted in upholding a five percent requirement in Oklahoma that individual voters did not have to promise to vote for the party, become members of the party, and could sign as many petitions as they wished for new political party formation. Okla. Stat. tit. 26, § 1-108 and *Libertarian Political Organization of Oklahoma v. Clingman*, 2007 OK CIV APP 51, 162 P.3d 948. Further, both the Reform Party and Libertarian Party have been successful in several recent elections (the Reform Party twice and the Libertarian Party five times) in obtaining ballot status under the party label for their candidates. *Libertarian Political Organization of Oklahoma v. Clingman*, at ¶¶ 19 and 21, and at 954.

Unlike the cases cited by Defendants in their Memorandum of Laws, Tennessee voters could not sign more than one petition for recognition of a new political party because they could not say that they are a member of more than one party at the same time. Defendants' statement on p. 39 of their Memorandum of Law is simply incorrect in stating that Oklahoma's Statutes are actually more stringent than Tennessee's. The five percent petition requirement of Oklahoma as compared to the 2½ percent requirement for Tennessee is more than offset by the significantly earlier and vague

---

[2] The State is in error on p. 29 of its Memorandum of Law in stating that the requirement in Pennsylvania for recognition of a new political party is two percent of the vote. Rather, Pennsylvania law has a requirement of two percent of the winning candidate's vote. Thus, if the winning candidate had 60 percent of the vote, the requirement would be two percent of 60 percent or 1.2 percent. If the winning candidate won with a plurality of 45 percent of the vote, two percent of 45 percent would be 9/10ths of one percent. Rogers v. Corvett, 468 F.3d 188 (3rd Cir. 2000).

18

filing deadline in Tennessee along with the party membership requirement. If Tennessee's laws were really not as stringent as Oklahoma's, why would Tennessee have no new political parties achieving ballot access in the last 42 years while Oklahoma has had two political parties (Reform and Libertarian) which have achieved ballot status in two and seven election years, respectively? Once again, as argued hereinabove, while very few states have requirements as high as 2½ percent for petition signatures, no other state in the Union but Tennessee has a membership requirement for petitions for recognition of new political parties. Further, the failed attempts by the Plaintiffs Green Party of Tennessee and Constitution Party of Tennessee, as well as other minor political parties in Tennessee (such as the Reform and Populist Parties), shows the severe effect of the challenged laws herein.

## IV.  CONCLUSION

WHEREFORE, premises considered, the Plaintiffs herein request that Defendants' Motion for Summary Judgment be denied.

Respectfully submitted this 16th day of February, 2010.

/s/ James C. Linger
JAMES C. LINGER, OBA#5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797 Phone; (918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com

/s/ Darrell L. Castle
DARELL L. CASTLE, TNB No. 6863
Darrell L. Castle & Associates
3100 Walnut Grove, Suite 610
Memphis, TN 38111
(901) 327-2100 Phone; (901) 458-9443 Facsimile
dlc2586@aol.com
*Counsel for Plaintiffs*

19

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of February, 2010, I electronically transmitted the

foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a

Notice of Electronic Filing to the following ECF registrants:

JANET KLEINFELTER,
Senior Counsel
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
janet.kleinfelter@state.tn.us
*Counsel for Defendants*

/s/ James C. Linger
James C. Linger, OBA No. 5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com
*Counsel for Plaintiffs*

20