IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LIBERTARIAN PARTY OF TENNESSEE, ANTHONY WALL, GREEN PARTY OF TENNESSEE, KATHLEEN A. CULVER, CONSTITUTION PARTY OF TENNESSEE and JOAN CASTLE,<br><br>Plaintiffs,<br><br>v.<br><br>MARK GOINS, Coordinator of Elections for the State of Tennessee, and TRE HARGETT, Secretary of State for the State of Tennessee,<br><br>Defendants. | Case No. 3:08-0063<br>Judge Haynes |

**PLAINTIFFS' RESPONSE, PURSUANT TO LOCAL RULE 56.01(c),
TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Secretary of State for the State of Tennessee and the Coordinator of Elections for the State of Tennessee submitted a Statement of Undisputed Facts in support of their Motion for Summary Judgment on January 15, 2010, as set forth hereinbelow. Plaintiffs now submit their response to Defendants' aforesaid Statement of Undisputed Facts Pursuant to Local Rule 56.01(c).

1. Tennessee's election laws define a political party as "an organization which nominates candidates for public office." (Tenn. Code. Ann. § 2-1-104(a)(14)).

Response: Plaintiffs agree that Defendants' Fact No. 1 is material and undisputed.

2. In order to obtain recognition as a *statewide* political party, an organization must meet one of the following requirements:

- Within the last four years, have at least one candidate for an office to be elected by voters of the entire state receive at least five percent (5%) of the number of votes cast for all gubernatorial candidates in the most recent election for governor; or

- File with the State Coordinator of Elections a petition signed by registered voters totaling at least two and a half percent (2 ½%) of the total number of votes cast for governor in the last election for governor, which achieves statewide political party status for one year.
  (Tenn. Code Ann. § 22-1-104(a)(30)).

Response: Plaintiffs state that Defendants' Fact No. 2 is immaterial and disputed. While the first paragraph of Defendants' Statement that a statewide political party can keep recognition by having at least one candidate for an office receive five percent of the number of votes cast for all gubernatorial candidates in the most recent election for governor is true, the second paragraph of said statement is only a partial requirement as to the petition requirement of 2½ percent of the last gubernatorial vote because it leaves out the requirements of Section 2-1-104(a)(30)(B) which requires in pertinent part that the 2½ percentage petition signature requirement states that the petition signatures must show the political party has a membership of registered voters as members of the party and certified as to as members of the party. Thus, Plaintiffs assert that the foregoing second paragraph of Fact No. 2 is incomplete and gives a false impression of the petition requirement. (Tenn. Code Ann. § 2-1-104(a)(30)(B), was formerly Tenn. Code Ann. § 2-1-104(a)(29)(B), prior to being renumbered and going into effect on January 1, 2009, Acts 2008, ch. 1108, § 7).

3. A statewide political party is required to nominate its candidates for four offices—governor, general assembly members, U.S. Senator and U.S. Representative—by primary election. They may nominate their candidates for all other offices by any method

authorized under the rules of the party or by primary election under this title. (Tenn. Code Ann. §§ 2-13-202,203).

Response: Plaintiffs agree that Defendants' Fact No. 3 is material and undisputed.

4. Both independent and primary candidates for any office to be filled at the regular November election for which a primary is required to be held at the regular August election shall qualify by filing such candidate's nominating petition no later than twelve o'clock (12:00) noon, prevailing time, on the first Thursday in April. (Tenn. Code Ann. § 2-5-101(a)(2)).

Response: Plaintiffs agree that Defendants' Fact No. 4 is material and undisputed.

5. Plaintiffs have not challenged the constitutionality of Tenn. Code Ann. § 2-5-101, either separately or in tandem with any other statute contained in Title 2 of the Tennessee Code Annotated. (Plaintiffs Complaint at pp. 3-7).

Response: Plaintiffs state that Defendants' Fact No. 5 is immaterial but undisputed as to being challenged directly. While Plaintiffs have not challenged the constitutionality per se of Tenn. Code Ann. § 2-5-101 on pages 3-7 of Plaintiffs' Complaint filed herein, that portion of paragraph VI on page 8, paragraph VII on pages 8 and 9, and paragraph VIII on page 10 of Plaintiffs' Complaint make clear that the interpretation of the deadline for filing a new party petition in Tennessee is vague, not specific, and under the interpretation given by affidavits and documents by the State of Tennessee is the first Thursday in March of the election year. (Plaintiffs' Complaint filed herein on January 23, 2008, ¶¶ VI, VII, and VIII, pages 8-10 and ¶ X, page 11, of Plaintiffs' aforesaid Complaint, Defendants' Exhibit "A", Affidavit of Mark Goins, ¶ 6, and Defendants' Exhibit "B", Affidavit of Brook Thompson), ¶ 5).

6. In order to qualify as a candidate for any office, whether as candidate in the primary election or as an independent in the general election, Tennessee's election laws only

require the filing of a nominating petition signed by the candidate and twenty-five (25) or more registered voters who are eligible to vote to fill the office by the qualifying deadline, with the exception of independent presidential candidates. For independent presidential candidates, the statutes require a petition to be signed by the candidate and twenty-five (25) or more registered voters for each elector allocated to Tennessee (*i.e.*, 275 signatures of registered voters). (Tenn. Code Ann. § 2-5-101(b)(1)).

Response: Plaintiffs agree that Defendants' Fact No. 6 is material and undisputed.

7. Since the names of the state executive committee members for a statewide political party must be certified to the State Coordinator of Elections at least ninety (90) days before the August election and since party primary candidates for the office of governor, general assembly member, U.S. Senator and U.S. Representative must qualify by the first Thursday in April, the Coordinator of Elections requires that the petitions to obtain recognition as a statewide political party must be filed at least thirty 930) days before the qualifying deadline for the August state primary, *i.e.*, the first Thursday in March. (Affidavits of Mark Goins and Brook Thompson, Exhibits A and B to Defendants' Motion for Summary Judgment).

Response: Plaintiffs agree that Defendants' Fact No. 7 is material and undisputed.

8. The thirty day time period is absolutely necessary to give state and local county election officials enough time to certify the registration of voters who have signed the petitions and to determine whether the petitions are sufficient to confer statewide political party status on an organization. (Affidavits of Mark Goins and Brook Thompson, Exhibits A and B to Defendants' Motion for Summary Judgment).

Response: Plaintiffs agree that Defendants' Fact No. 8 is material and undisputed.

9. Tennessee's elections laws require that before a political party may have its nominees on a ballot or exercise any of the rights of political parties, it must have filed with the State Coordinator of Elections copy of the rules under which the party and its subdivision operate. (Tenn. Code Ann. § 2-1-114).

Response: Plaintiffs agree that Defendants' Fact No. 9 is material and undisputed.

10. None of the Plaintiff political parties has filed a copy of their rules with the State Coordinator of Elections. (Affidavit of Mark Goins, Exhibit A).

Response: Plaintiffs dispute Defendants' Fact No. 10 is material and undisputed. While this Statement of Fact is true in and of itself, it is also immaterial because unrecognized political parties do not need to file a copy of their rules with the State Coordinator of Elections until they have been recognized by the State of Tennessee. The attachment marked Exhibit "1" to Defendants' Exhibit "C", Affidavit of Beth Henry-Robertson, states under the heading of Formation of a Statewide Political Party that "The first step in the process for recognition as a statewide political party is the filing of a petition." Defendants' aforesaid Exhibit "1" attached to Plaintiffs' Exhibit "C" then states on the second page for formation of a statewide political party that after the new political party becomes a statewide political party, it has additional requirements to meet.

11. Tennessee has a population of approximately 6.2 million and currently has over 3.8 million registered voters. (Affidavit of Mark Goins, Exhibit A).

Response: Plaintiffs agree that Defendants' Fact No. 11 is material and undisputed.

12. In registering to vote, Tennessee's election laws do not and have not ever required that an individual register by political party affiliation. (Affidavits of Mark Goins and Brook Thompson, Exhibits A and B).

Response: Plaintiffs agree that Defendants' Fact No. 12 is material and undisputed.

5
Case 3:08-cv-00063    Document 38    Filed 02/16/10    Page 5 of 20 PageID #: 467

13. The State Division of Elections has developed a handout titled "Procedures for Recognition as a Statewide or Local Political Party in Tennessee" that is routinely provided in the first instance to any individual or organization who inquires about the process for obtaining recognition as a statewide political party. (Exhibit 1 to Affidavit of Beth Henry-Robertson attached as Exhibit C to Defendants' Motion for Summary Judgment).

Response: Plaintiffs agree that Defendants' Fact No. 13 is material and undisputed.

14. This hand-out does not contain any language indicating that a petition must be signed by members of the party seeking to obtain recognition as a statewide political party. (Affidavits of Mark Goins, Brook Thompson and Beth Henry Robertson, Exhibits A, B and C).

Response: Plaintiffs state that Defendants' Fact No. 14 is immaterial but undisputed. It is immaterial that the handout does not contain any language indicating that a petition must be signed by members of the party seeking to obtain recognition as a statewide political party since this is in conflict with Tenn. Code Ann., § 2-1-104(a)(30)(B), which specifically refers to the requirement that the petition be ". . . signed by registered voters as members of the party . . . ." (Plaintiffs' Exhibit "4", Affidavit of Richard Winger dated February 8, 2010, ¶ 7).

15. The State Division of Elections will work with an organization seeking to obtain recognition as a statewide political party to approve the format of the organization's petition. In approving the format of a petition, the Division looks to see that the petition includes the following three things: (1) title, *i.e.*, what the petition is for; (2) a summary or statement of the purpose of the petition; and (3) appropriate space for the signatures of registered voters, including space not only for the person's signature, but also for the person to print his/her name and provide their full address, including the county. The Division does not in any way mandate

the language to be used in the petition nor does it review the language used, particularly in the summary of the petition. (Affidavit of Beth Henry-Robertson, Exhibit C).

Response: Plaintiffs dispute Defendants' Fact No. 15 is material and undisputed. In discussing the wording to be put on petitions in 2001 and 2003, the ". . . Secretary of State office was evasive and unhelpful and refused to offer acceptable language nor confirm whether specific language on the petitions would be accepted. They insisted we had to collect the signatures first, then they would tell us if the wording on our petition was adequate!" (Defendants' Exhibit "K", Green Party of Tennessee's Response to Defendants' Interrogatories, p. 11, Answer to Interrogatory No. 10(a)).

16. In 2002, the State Division of Elections developed a sample form petition. This sample form does not contain any provision for a person to indicate party membership or affiliation on the fact of that petition. (Affidavit of Beth Henry-Robertson and Exhibit 2 attached thereto).

Response: Plaintiffs agree Defendants' Fact No. 16 is material and undisputed.

17. The State Division of Elections, in conjunction with the local county election commission, only reviews and certifies the registration of voters signing the petition. It does not certify, review or otherwise make any determination as to whether the registered voters are also members of the party in question. (Affidavits of Mark Goins, Brook Thompson and Beth Henry-Robertson, Exhibits A, B and C).

Response: Plaintiffs agree that Defendants' Fact No. 17 is material and undisputed.

18. Voters' signatures on petitions have not been rejected nor would they be rejected on the grounds that the voters failed to identify their party membership or affiliation on the

7

petition. (Affidavits of Mark Goins, Brook Thompson and Beth Henry-Robertson, Exhibits A, B and C).

Response: Plaintiffs dispute Defendants' Fact No. 18 is material and undisputed. The failed attempts by the Populist, Green, Reform, and Constitution parties in Tennessee resulted in several thousand signatures being obtained, but never in a sufficient number to be successful under Tennessee law. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 5, ¶ 19). Thus, the Secretary of State and Coordinator of Elections for the State of Tennessee has never had the opportunity to actually have a petition with a legally sufficient number of signatures on petitions to form a new political party in Tennessee. (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, p. 3, ¶ 4; Tenn. Code Ann. § 2-1-104(a)(30)(B)).

19. New party petitions have not been rejected on the grounds that they failed to indicate party membership of the signers of the petition nor would they be rejected on those grounds. (Affidavit of Mark Goins, Brook Thompson and Beth Henry-Robertson, Exhibits A, B and C).

Response: Plaintiffs dispute Defendants' Fact No. 19 is material and undisputed. The failed attempts by the Populist, Green, Reform, and Constitution parties in Tennessee resulted in several thousand signatures being obtained, but never in a sufficient number to be successful under Tennessee law. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 5, ¶ 19). Thus, the Secretary of State and Coordinator of Elections for the State of Tennessee has never had the opportunity to actually have a petition with a legally sufficient number of signatures on petitions to form a new political party in Tennessee. (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, p. 3, ¶ 4; Tenn. Code Ann. § 2-1-104(a)(30)(B)).

20. The founding date of the Libertarian Party of Tennessee ("LPT") is unknown. (Deposition of Anthony Wall at p. 11, attached as Exhibit D to Defendants' Motion for Summary Judgment (hereinafter referred to as "Wall Deposition").

Response: Plaintiffs dispute Defendants' Fact No. 20 is material and undisputed. This statement of fact by the Defendants that the founding date of the Libertarian Party of Tennessee is unknown is not reflected in the deposition of Anthony Wall in Defendants' Exhibit "D", Deposition of Anthony Wall, at page 11). Page 11 of the aforesaid deposition says nothing about the founding date of the Tennessee Libertarian Party being unknown. However, pages 8 and 9 of Mr. Wall's deposition, Plaintiffs' Exhibit "5" hereto, indicate that Mr. Wall has only been a registered voter in Tennessee since 1998, that the Libertarian National Party was established in 1971, but that Mr. Wall was not sure of the date that the actual Libertarian Party of Tennessee was formally founded, and that Mr. Wall had only been a member of the Libertarian Party since 1999.

21. The LPT has approximately six to seven county affiliates and several regional affiliates (*e.g.*., Upper Cumberland, Tri-Cities). (Exhibit D, Wall Deposition at p. 60).

Response: Plaintiffs agree that Defendants' Fact No. 21 is material and undisputed.

22. The LPT currently has approximately 1,980 members. (Exhibit D, Wall Deposition at p. 59; LPT Responses to Interrogatories attached as Exhibit E to Defendants' Motion for Summary Judgment).

Response: Plaintiffs agree that Defendants' Fact No. 22 is material and undisputed.

23. Membership in either the national Libertarian Party or a county or regional affiliate automatically confers membership in the LPT. Membership requirements in the LPT are otherwise intentionally vague. Essentially, if an individual participates in the LPT at the state level, either through its state website, blog sites or other forms of activism, such individual is

considered to be a member of the LPT. However, in order to actually participate in the LPT's business (i.e., vote), an individual must be accepted by the delegates at the LPT's state convention upon a recommendation of an officer of the party or a regional coordinator. (Exhibit D, Wall Deposition at 57-58; Exhibit 4 to Wall Deposition).

Response: Plaintiffs agree that Defendants' Fact No. 23 is material and undisputed.

24. The LPT does not maintain any official headquarters or paid staff, although it does operate a website. The LPT also does not have any rules or procedures by which the party operates other than its By-Laws. (Exhibit D, Wall Deposition at p. 71; Exhibit 4 to Wall Deposition).

Response: Plaintiffs agree that Defendants' Fact No. 24 is material and undisputed.

25. Since at least 1976, there has been a presidential candidate on the ballot in Tennessee that has been endorsed by the LPT as their candidate, although listed on the ballot as an independent candidate. (Exhibit E, Response No. 5).

Response: Plaintiffs dispute Defendants' Fact No. 25 is material and undisputed. Statement No. 25 is not correct to the extent that the Libertarian candidate for President was listed as a Libertarian on the Tennessee ballot in the 2000 election in Tennessee. In 2000, the Tennessee legislature authorized a temporary procedure by which candidates who had used the independent procedure, but had polled 5,000 votes for the presidential candidates in 1996 as independents, could have the party label printed on the November 2000 ballot. The Libertarian's presidential candidate qualified for this temporary procedure in Tennessee in 2000. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 4, ¶ 12).

26. All of these candidates have received less than one percent (1%) of the vote in the presidential election. (Id.)

Response: Plaintiffs agree that Defendants' Fact No. 26 is material and undisputed.

27. In the November 2000 presidential election, the LPT's candidate, Harry Browne, was identified on the ballot as the LPT's candidate. He received only .21% of the votes cast in Tennessee. (Exhibit E, Response No. 5; Wall Deposition at 39-40).

Response: Plaintiffs agree that Defendants' Fact No. 27 is material and undisputed.

28. The LPT has never had a candidate for a statewide office that has received at least five percent of the number of votes cast for all gubernatorial candidates in the most recent election for governor. (Exhibit E, Response NO. 5; Exhibit D, Wall Deposition at 37-38.)

Response: Plaintiffs agree that Defendants' Fact No. 28 is material and undisputed.

29. The LPT has also never had a candidate for a statewide office that has received at least five percent (5%) of the votes cast in that election. (Exhibit E, Response No. 5).

Response: Plaintiffs agree that Defendants' Fact No. 29 is material and undisputed.

30. The LPT has also never taken *any action* to obtain recognition as a statewide political party through the petition process. (Exhibit D, Wall Deposition at 41-43; Exhibit E, Response Nos. 6 and 10).

Response: Plaintiffs agree that Defendants' Fact No. 30 is material and undisputed.

31. The Constitution Party of Tennessee ("CPT") was established in 1992 by Plaintiff Joan Castle and Darrell Castle. (Deposition of Joan Castle at p. 8, attached as Exhibit F to Defendants' Motion for Summary Judgment (hereinafter referred to as "Castle Deposition")).

Response: Plaintiffs agree that Defendants' Fact No. 31 is material and undisputed.

32. The CPT does not have a charter, by-laws, or any rules of proceeding. It has no formal registration of members, but instead, considers people who are on its mailing list to be members of the organization. The CPT currently has 631 names on its mailing list. (CPT's

Responses to Interrogatories, Response No. 14, attached as Exhibit G to Defendants' Motion for Summary Judgment).

Response: Plaintiffs agree that Defendants' Fact No. 32 is material and undisputed.

33. The CPT does not have regular meetings, although it may meet once every four years. It does not keep minutes of any of its meetings, nor does it keep any records of the actions or activities of the CPT. It also does not maintain an office space or paid staff. (Exhibit F, Castle Deposition at 52-56).

Response: Plaintiffs agree that Defendants' Fact No. 33 is material and undisputed.

34. The CPT is "a group of people in the state who all agree that [they] are members of an affiliate of the [National] Constitution Party." (*Id.* at 53 (lines 4-6)).

Response: Plaintiffs agree that Defendants' Fact No. 34 is material and undisputed.

35. Since 1992, there has been a presidential candidate on the ballot in Tennessee that has been endorsed as the CPT's candidate, however they have been identified on the ballot as an independent candidate. (Exhibit G, Response No. 5).

Response: Plaintiffs agree that Defendants' Fact No. 35 is material and undisputed.

36. All of these candidates have received less than one percent (1%) of the vote in the presidential election. (*Id.*)

Response: Plaintiffs agree that Defendants' Fact No. 36 is material and undisputed.

37. Pursuant to the "Fair Ballot Access Act of 2000" (codified at Tenn. Code Ann. § 2-5-208(d)(1)), the CPT's presidential candidates was listed on the ballot as the candidate of the Constitution Party in the November 2000 presidential election. However, the CPT's candidate, Howard Phillips, only received .05% of the votes cast in Tennessee. (Exhibit G, Response No. 5.)

Response: Plaintiffs dispute Defendants' Fact No. 37 is material and undisputed. The Constitution Party of Tennessee's presidential candidate was not listed on the Tennessee ballot in 2000 as the candidate of the Constitution Party. The temporary procedure authorized by the Tennessee legislature by which candidates who had used independent procedure in the previous presidential election but had polled 5,000 votes for the presidential candidate in 1996 as independents, could have the party labeled on the November 2000 ballot. However, this did not apply in the 2000 election in Tennessee to the Constitution Party because the temporary procedure provided by the Tennessee legislature only allowed the candidates for the Libertarian, Reform, and Green parties to have their party name next to their candidate's name in the 2000 election only. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p.4, ¶ 12). The Constitution Party's candidate for President of the United States, Howard Phillips, appeared on Tennessee's ballot only as an independent in the 2000 election.

38. The CPT has never had a candidate for a statewide office and, consequently, has never had a candidate for a statewide office that has received at least five percent of the number of votes cast for all gubernatorial candidates in the most recent election for governor. (Exhibit G, Response No. 5).

Response: Plaintiffs agree that Defendants' Fact No. 38 is material and undisputed.

39. The CPT made one attempt in 2001 to obtain recognition as a statewide political party through the petition process for the 2004 presidential election. (Exhibit G, Response No. 6; Exhibit F, Castle Deposition at p. 39).

Response: Plaintiffs dispute Defendants' Fact No. 39 is material and undisputed. The Constitution Party of Tennessee has made attempts other than in 2001 to obtain recognition as a statewide political party through the petition process. While the statement is correct that there was

13

one attempt in 2001 for the 2004 election in Tennessee, it is particularly material that the Constitution Party had tried to obtain political party recognition in Tennessee in 1999-2000, again in 2001-2002, and a third time in 2003-2004, but each time was unsuccessful. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 5, ¶ 18).

40. In mid-August, 2001, the CPT's petition was approved by the State Division of Elections. This petition did not contain any requirement on its face that the individual signing the petition be a member of the CPT. (Exhibit F, Castle Deposition at p. 40, 61; Exhibit 2 to Castle Deposition; *see also* Exhibit G, Response No. 6.)

Response: Plaintiffs agree that Defendants' Fact No. 40 is material and undisputed.

41. In obtaining signatures on their petition, the CPT did not inquire as to whether the person signing the petition was a member of the CPT. (Exhibit G, Response Nos. 8 and 12 (f).)

Response: Plaintiffs dispute Defendants' Fact No. 41 is material and undisputed. The Constitution Party did not as an entity inquire as to whether persons signing the petitions were members of the CPT since only individuals circulated the petition. While the answer to Interrogatory No. 8 shows that there was no record (not asked) as to whether anyone refused to sign the petition on the grounds that they were not a member of the Constitution Party, and the answer to Interrogatory No. 12 as to whether the State Coordinator of Elections had rejected or excluded signatures of a person who signed the petition for the Constitution Party on the grounds that that person was not a member of the Constitution Party simply indicates that it is unknown as they never reported to the Constitution Party the number of acceptable signatures. However, the answer to Interrogatory No. 7 indicates that they mailed a petition to everyone they had on their list and did not know exactly who did them. The petitions were then returned to Joan Castle. (Plaintiffs' Exhibit "6", Plaintiffs' Constitution Party of Tennessee's Response to Defendant's First Set of

Interrogatories and Requests for Production of Documents, pp. 8 and 9, Answers to Interrogatories 6 and 7).

42. On September 6, 2001, the CPT submitted 293 petition pages containing approximately 4200 signatures. (Affidavit of Beth Henry Robertson, Exhibit C.)

Response: Plaintiffs agree that Defendants' Fact No. 42 is material and undisputed.

43. On November 2, 2001, the CPT submitted another 345 petition pages containing approximately 5000 signatures. The State Division of Elections does not have any record of any petition pages submitted to it by the CPT after November 2, 1001. (*Id.*)

Response: Plaintiffs agree that Defendants' Fact No. 43 is material and undisputed.

44. The Green Party of Tennessee ("GPT") was initially established in 1992-1993, however, the members were unable to keep a "core group together that went from election to election." (Deposition of Kathleen Culver at p. 12, attached as Exhibit H to Defendants' Motion for Summary Judgment (hereinafter referred to at "Culver Deposition")).

Response: Plaintiffs agree that Defendants' Fact No. 44 is material and undisputed.

45. The GPT was re-established in 1999-2000 in time for the 2000 Presidential election. (*Id*).

Response: Plaintiffs agree that Defendants' Fact No. 45 is material and undisputed.

46. The GPT does have By-Laws and Rules for the GPT's Nominating Convention and Presidential Candidate Election. (Exhibit I and J).

Response: Plaintiffs agree that Defendants' Fact No. 46 is material and undisputed.

47. With respect to nominating conventions, the By-Laws require that for state-wide offices, nominating conventions are to be called at a minimum of one month prior to any and all related State of Tennessee candidate filing deadlines. (Exhibit I, Article V.C.)

Response: Plaintiffs agree that Defendants' Fact No. 47 is material and undisputed.

48. Membership in the GPT is obtained through "self-recognition and agreement to the Ten Key Values." (Exhibit H. Culver Deposition at p. 47; Exhibit I, Article III.A.)

Response: Plaintiffs agree that Defendants' Fact No. 48 is material and undisputed.

49. A member obtains voting rights by submitting a signed copy of the 10 Key Value pledge form to the SCC. (Exhibit H. Culver Deposition at 48; Exhibit I, Article III.A.).

Response: Plaintiffs agree that Defendants' Fact No. 49 is material and undisputed.

50. Because membership in the GPT can be obtained simply by self-recognition, the GPT has no official record of its membership; however the number of people served by the GPT and its county chapters through services such as email listserv, newsletters and correspondence is approximately 500. (GPT's Responses to Interrogatories, Response No. 14, attached to Exhibit K to Defendants' Motion for Summary Judgment; Exhibit H. Culver Deposition at 50-51.)

Response: Plaintiffs agree that Defendants' Fact No. 50 is material and undisputed.

51. Since the GPT was re-established in 1999-2000, it has only had one presidential candidate on the ballot in Tennessee. (Exhibit K. Response No. 5.)

Response: Plaintiffs dispute Defendants' Fact No. 51 is material and undisputed. Since the Green Party of Tennessee was reestablished in 1999-2000, it has had two presidential candidates on the ballot in Tennessee, not one. Those two candidates were Ralph Nader in 2000 (listed on the ballot under the temporary procedure provided by the Tennessee legislature as a Green Party candidate) and Cynthia McKinney in 2008, listed on the ballot as an Independent candidate. In 2004, the Green Party's candidate for President ran as a write-in candidate only in Tennessee. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 4, ¶ 12, Defendants' Exhibit "L", Green

Party of Tennessee's Supplemental Response to Defendants' Interrogatories, p. 8, Answer to Interrogatory No. 5).

52. In 2000, pursuant to the "Fair Ballot Access Act of 2000" (codified at Tenn. Code Ann. § 2-5-208(d)(1)), the GPT's presidential candidate was listed on the ballot as the candidate of the Green Party in the November 2000 presidential election. However, the GPT'S candidate, Ralph Nader, only received .95% of the votes cast in Tennessee. (Exhibit K, Response NO. 5.)

Response: Plaintiffs agree that Defendants' Fact No. 49 is material and undisputed.

53. The GPT has never had a candidate for a statewide office that has received at least five percent of the number of votes cast for all gubernatorial candidates in the most recent election for governor and thus, has not obtained recognition as a statewide political party through that process. (Exhibit K, Response No. 5.).

Response: Plaintiffs agree that Defendants' Fact No. 49 is material and undisputed.

54. The GPT has never had a candidate for a statewide office that has received at least five percent (5%) of the votes cast in that election. (Exhibit K, Response No. 5).

Response: Plaintiffs agree that Defendants' Fact No. 49 is material and undisputed.

55. The GPT has also never attempted to obtain recognition as a statewide political party through the petitioning process, even though the GPT had recognized that it was attainable goal that the party should work hard to meet. (Exhibits 2, 6 and 7 to Exhibit H, Culver Deposition; Exhibit K, Response Nos. 6 and 10.).

Response: Plaintiffs dispute Defendants' Fact No. 55 is material and undisputed. The Green Party has attempted to gain recognition as a statewide political party through the petitioning process in 1993-1994, but was unsuccessful. (Plaintiffs' Exhibit "1", Affidavit of Richard Winger, p. 5, ¶ 16). Ms. Culver states on page 12 of her deposition that the Green Party's initial effort was in

1992 and 1993 and that she was only "very peripherally" involved in the initial effort. (Defendants' Exhibit "H", Deposition of Kathleen Culver, p. 12). Further, it is not true that all members of the Green Party think the petitioning route is an attainable goal since page 9, Answer to Interrogatory No. 6(d) indicates that the Green "Party has limited resources in collecting petition signatures that require the signers to attest to being members of a not-yet-in-existence party is a foolhardy and futile exercise. (Defendants' Exhibit "K", Green Party of Tennessee's Response to Defendants' Interrogatories, p. 9, Interrogatory Answer 6(d)).

### PLAINTIFFS' CONCISE STATEMENT OF ADDITIONAL FACTS THAT PLAINTIFF CONTENDS ARE MATERIAL AS TO WHICH PLAINTIFFS CONTEND THERE EXISTS A GENUINE ISSUE TO BE TRIED

56.     The filing deadline for petitions for the recognition of a new political party in the State of Tennessee is rather vague. Most states have a specific filing deadline instead of a deadline which must be determined by looking at various requirements for the doing of other actions. (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, p. 3, ¶ 5).

Response:

57.     In states of the United States in which there are official records of political party membership, Alaska is the only state in the United States in which the Libertarian Party has a membership of at least 2 ½ percent of the last total vote for governor. (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, p. 3, ¶ 8).

Response:

58.     In states of the United States in which there are official records of political party membership, Maine is the only state in the United States in which the Green Party has a

membership of at least 2 ½ percent of the last total vote for governor. (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, p. 4, ¶ 9).

Response:

59. In states of the United States in which there are official records of political party membership, California and Nevada are the only states in the United States in which the Constitution Party (using the affiliated names of American Independent Party for California and Independent American Party for Nevada) has a membership of at least 2½ percent of the last total vote for governor. (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, p. 4, ¶ 10).

Response:

60. Twenty-one states of the United States do not have voter registration by political party. Among these states are Ohio, Tennessee, Minnesota, North Dakota, and Texas. (Plaintiffs' Exhibit "4", Affidavit of Richard Winger of February 8, 2010, p. 4, ¶ 13).

Response:

61. While the Libertarian Party of Tennessee has never attempted a petition drive for political party recognition because they found the law's requirements prohibitive, they have initiated efforts with the Tennessee Legislature to attempt to have the election laws regarding new party and minor party formation amended. However, these attempts to have the law changed have been unsuccessful so far. (Defendants' Exhibit "D", Deposition of Anthony Wall, p. 41, lines 5-23; Plaintiffs' Exhibit "5", Deposition of Anthony Wall, pp. 43-52).

Response:

Respectfully submitted,

/s/ James C. Linger
James C. Linger, OBA#5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797 Telephone
(918) 583-8283 Facsimile

Darrell L. Castle, (BPR 6863)
3100 Walnut Grove, Suite 610
Memphis, TN 38111
(901) 327-2100
Dlc2586@aol.com

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2010, a true and correct copy of the above and foregoing motion was served upon:

JANET KLEINFELTER,
Senior Counsel
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202-0207
janet.kleinfelter@state.tn.us
*Counsel for Defendants*

/s/ James C. Linger
James C. Linger, OBA No. 5441
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com
*Counsel for Plaintiffs*