IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LIBERTARIAN PARTY OF TENNESSEE, )
ANTHONY WALL, GREEN PARTY OF )
TENNESSEE, KATHLEEN A. CULVER, )
CONSTITUTION PARTY OF )
TENNESSEE and JOAN CASTLE, )
)
    Plaintiffs, )
)
v. ) Case No. 3:08-0063
) Judge Haynes
MARK GOINS, Coordinator of )
Elections for the State of Tennessee, and )
TRE HARGETT, Secretary of State for the )
State of Tennessee, )
)
    Defendants. )

## DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, the Coordinator of Elections for the State of Tennessee and the Secretary of State for the State of Tennessee, hereby submit this reply in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.

### ARGUMENT

The basic premise of Plaintiffs' argument – both in support of their own motion for summary judgment and in opposition to Defendants' motion for summary judgment – is that the combination of the "membership" requirement, the early filing deadline and the 2.5% signature requirement is fatal to any political party being successful in obtaining recognition as a statewide

political party through the petition process.[1] However, when a closer analysis of the facts and undisputed evidence in the record is done, it quickly becomes apparent that Plaintiffs' complaint is really just with the 2.5% signature requirement – a percentage requirement which is clearly within the constitutional parameters – and that the other two provisions are simply being used as window dressing in an attempt to bolster Plaintiffs' case.

**Membership Requirement**

With respect to the membership requirement, the Defendants do not dispute, nor have they ever disputed, that the language of Tenn. Code Ann. § 2-1-104(a)(30) states that petitions to establish a political party are to be "filed with the coordinator of elections and signed by registered voters as members of the party and certified as registration of the signers by the county election commissions of the counties where the signers are residents."[2] However, Plaintiffs have clearly stated that they are raising an "as applied" challenge and not a facial challenge to this statute. Moreover, the undisputed evidence in the record is that: (1) this "membership" requirement has never been enforced nor will be enforced; (2) the position of state election officials is that they have no authority or ability to enforce this requirement because Tennessee does not require its residents to register to vote by party affiliation and (3) the membership requirement has had no effect on Plaintiffs' attempts to obtain recognition as statewide political parties through the petition process.

With respect to the evidence concerning no enforcement of the membership requirement, Plaintiffs have asserted that this evidence is disputed on the grounds that, since no political party

---

[1] Interestingly enough, Plaintiffs do not challenge the automatic recognition provisions when a political party has candidate in a statewide election receive 5% of the vote.

[2] To the extent Plaintiffs have objected to Defendants' Statement of Undisputed Material Fact No. 2 as being undisputed, Defendants do not deny, as already stated, that Tenn. Code Ann. § 2-1-104(a)(30) states that the petitions are to be "signed by registered voters as members of the party." Accordingly, Plaintiffs' objection is without merit.

2

has been successful in obtaining a significant number of signatures, the Defendants have never had the opportunity to "enforce" the membership requirement.[3] This argument ignores, however, the testimony of the former and current State Coordinator of Elections and the Assistant Coordinator of Elections that they, as election officials, *have no authority or ability to enforce the "membership" requirement and that they would not reject a voter's signature or a new party petition for failure to indicate party membership.* Accordingly, Plaintiffs' objection fails to create a genuine issue with respect to this material fact.[4]

With respect to the evidence concerning the lack of effect that the membership requirement has had on the Plaintiffs' attempts to obtain recognition as statewide political parties through the petition process, it is clear that, since the LPT and GPT have never made any attempt to obtain recognition through the petition process, the membership requirement could not have had an effect on them. However, in an attempt to try and create an issue for trial, Plaintiffs appear to dispute that there was a lack of effect on the CPT. They do so by asserting that the CPT could not if there was any effect from the membership requirement because the CPT did not know who exactly was collecting signatures for them.[5] This statement does not actually dispute the fact that there is no evidence in the record demonstrating any negative effect of the membership requirement. Instead, it simply tries to create an ambiguity with respect to the CPT. Furthermore, it ignores the CPT's responses to Interrogatory Nos. 8 and 11. In Interrogatory No. 8, the CPT was asked to identify any persons who refused to sign a petition on the grounds that they were not a member of the Constitution Party and the response was "No record (not asked)."

---

[3] *See* Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts Nos. 18 and 19.

[4] Furthermore, Plaintiffs have not disputed the testimony of former and current state election officials that they have no ability to enforce the membership requirement.

[5] *See* Plaintiffs' Responses to Defendants Statement of Undisputed Material Facts No. 41.

3

In Interrogatory No. 11, the CPT was asked to identify any person who refused to sign a petition on the grounds that they were not a member of the Constitution Party, as well as any person who was excluded from a petition on the grounds that they were not a member of the Constitution Party. The CPT's response against was "No record (not asked why)."[6] Plaintiffs' objection further ignores the undisputed fact that the petition circulated by the CPT in 2001 on its face did not contain any space for the signer to indicate his or her membership in the CPT.[7] Accordingly, Plaintiffs' objection fails to create a genuine issue with respect to this material fact as well.

Thus, based upon the undisputed evidence in the record, this "membership" requirement, although admittedly contained in the language of Tenn. Code Ann. § 2-1-104(a)(30), has never been enforced, would not and cannot be enforced and has had no effect whatsoever – either by itself or in combination with the 2.5% signature requirement – on the Plaintiffs' attempts to obtain recognition as statewide political parties through the petition process. Clearly, the "membership" provision of Tenn. Code Ann. § 2-1-104(a)(30)(B) places at best only a minimal burden on Plaintiffs' First Amendment rights. Consequently, even if this Court were to declare this provision unconstitutional and elide it from the statute, such action would simply have no effect on the parties' actions in the future, particularly since the state election officials have testified that they not only would they not enforce this provision in the future, but that they have no ability to enforce it.

### Filing Deadline

As Plaintiffs have pointed out, and as acknowledged by the Defendants, there is no state statute establishing a deadline for when new statewide political party petitions must be filed. Rather, state election officials, interpreting and administering the election laws as a whole, have

---

[6] *See* Exhibit G to Defendants' Motion for Summary Judgment.

[7] *See* Exhibit 2 to Exhibit F to Defendants' Motion for Summary Judgment.

4

established a policy that such petitions need to be filed at least thirty (30) days before the qualifying deadline which is the first Thursday in April.[8] This policy is based upon the assumption that if a political party is seeking to obtain recognition as a statewide political party, such party would want to at least nominate candidates for the available statewide offices, *i.e.*, governor and U. S. Senate (otherwise a party could simply follow the procedures for obtaining recognition as a countywide or local political party). It is somewhat fundamental, however, that before a political party can nominate candidates for these statewide offices, it must first have obtained recognition as a statewide political party. Thus, in order to have sufficient time to certify the registration of voters who have signed the petitions and to determine whether the petitions are sufficient to confer statewide political party status on an organization before the April qualifying deadline, the state election officials have established a policy that such petitions need to be filed at least thirty days before the qualifying deadline.[9]

As already stated, this is only a policy established by state election officials interpreting and administering the state's election laws as a whole, and admittedly there is no statute requiring Plaintiffs or any other political party to file new statewide party petitions thirty (30) days before the April qualifying deadline. If, however, a party does not file their petitions by this deadline, then they run the risk that they will not obtain recognition as a statewide political party in time for their candidates to qualify to be on the ballot in the August primary or November general elections. Thus, the new statewide party petition filing deadline is not simply a matter of administrative convenience; rather the deadline is in effect mandated by Tennessee's election

---

[8] As previously noted, and not disputed, Plaintiffs are not challenging the constitutionality of the qualifying deadlines established in Tenn. Code Ann. § 2-5-101, either separately or in tandem with the requirements of Tenn. Code Ann. § 2-1-104(a)(30).

[9] Plaintiffs have not disputed that the thirty day time period is absolutely necessary to give state and local county election officials enough time to certify the registration of voters and to determine whether the petitions are sufficient to confer statewide political party status. *See* Plaintiffs' Responses to Defendants' Statement of Undisputed Material Facts No. 8.

5

schedule. Moreover, it should not be forgotten that there is simply no evidence in the record that the policy establishing this filing deadline has had any effect on the Plaintiffs' or any other political party's attempts to obtain recognition as statewide political parties through the petition process.[10] In fact, the undisputed evidence in the record would actually support a determination that the filing deadline has had no effect.[11]

Despite the lack of any evidence that the filing deadline has ever had any effect on the attempts of any political party to obtain recognition as a statewide political party, Plaintiffs argue that this deadline, operating in tandem with the 2/5% signature requirement, is unduly burdensome because it is so far in advance of the November general election, relying upon the decision in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006). However, as discussed in Defendants' memorandum in support of their motion for summary judgment, there are significant differences between the facts and circumstances in that case and the ones presented in this case.

One important distinction is that *Blackwell* dealt with the burdens imposed by Ohio's statutes on new political parties in presidential election years only. Here, the restrictions in question do not impact the ballot access of presidential candidates and, therefore, do not place a state-imposed restriction on the nationwide electoral process as Tennessee has a separate statute governing ballot access for non-statewide party candidates.[12] Furthermore, if a political party wanted to obtain recognition as a statewide political party but only nominate presidential

---

[10] Plaintiffs also assert that because the filing deadline is established in a policy rather than a statute, it is so vague as to unduly burden their First Amendment rights. However, there is no evidence in the record that would support this argument. In fact, the contrary evidence in the record is that whenever a political party contacted the State Division of Elections about obtaining statewide recognition through the petition process, that Office would calculate and specifically inform them of the date when their petitions were due. *See* Exhibit C to Defendants' Motion for Summary Judgment.

[11] *See* Exhibit E, Response No. 5; Exhibit G, Response No. 5 and Exhibit K, Response No. 5.

[12] *See* Tenn. Code Ann. § 2-5-208(d)(1).

6

candidates, then the filing deadline would clearly fall within constitutionally recognized parameters. As previously discussed, the policy that new party petitions be filed thirty (30) days before the April qualifying deadline is based upon the premise that the political party seeking statewide recognition desires to nominate candidates for statewide offices and, therefore, the deadline is driven by the qualifying deadline for those candidates. The qualifying deadline for presidential candidates (party nominees and independent), however, is not until the third Thursday in August. Thus, if a political party seeking recognition as a statewide political party desired only to have their presidential candidate on the ballot in the November general election, then, under the same reasoning, the petition filing deadline would presumably be thirty (30) days prior to the third Thursday in August, *i.e.*, the third Thursday in July. Such a deadline is only 109 days before the November general election and is entirely reasonable and within the parameters that have been upheld by the U.S. Supreme Court as being constitutional.[13]

Accordingly, the undisputed evidence in the record is that the petition filing deadline, either separately or in tandem with the 2.5% signature requirement, has had – like the membership requirement – at best only minimal impact upon the Plaintiffs' ability to obtain recognition as a statewide political party and that Tennessee's petition filing deadline is mandated by its election schedule, and in particular, the candidate qualification deadline which Plaintiffs have not challenged. Furthermore, Tennessee has an important interest, as recognized by the Supreme Court, "in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot – the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election", as well as in preserving parties as viable and identifiable interest

---

[13] *See Jenness v. Fortson*, 403 U.S. 431, 440-42 (1971) (upholding Georgia's five percent signature requirement and June filing deadline acting in concert).

7

groups and discouraging frivolous candidates, party raiding and sore loser candidates by spurned contenders.[14] In light of this undisputed evidence and authority, the petition filing deadline, either standing alone or in concert with the 2.5% petition signature requirement, does not unnecessarily restrict or infringe upon the associational rights of Plaintiffs and is reasonable and justified by legitimate state interests.

### 2.5% Signature Requirement

Given the lack of evidence that the "membership" requirement and the filing deadline have had any recognizable effect on the Plaintiffs' attempts to obtain recognition as statewide political parties, it is readily apparent that Plaintiffs' real complaint is that they believe the 2.5% signature requirement to be too difficult and burdensome to achieve. They point to the fact that no political party has been successful in obtaining this percentage of signatures since 1972 as evidence that the 2.5% requirement is too burdensome. However, this argument ignores the fact that the American Party was able to meet an even higher percentage requirement (5%) in 1968. Furthermore, the U.S. Supreme Court has upheld petition signature requirements of as much as five percent (5%) and without reference to the state's population, the number of state's registered voters or the number of voters in the state's most recent gubernatorial or presidential election.[15] Consequently, Tennessee's 2.5% signature requirement is clearly within the range recognized as being constitutional.

This argument further ignores the fact. Moreover, it ignores the evidence in the record that the failure of "minor" parties such as Plaintiffs to obtain recognition as a statewide political party is not likely the result of the challenged percentage signature requirements, but rather the

---

[14] *See Rainbow Coalition*, 844 F.2d at 743 (citing *Munro*, 107 S.Ct. at 537) and *Libertarian Party v. Clingman*, 162 P.3d at 955 (citing *Clingman v. Beaver*, 544 U.S. at 581).

[15] *See Jenness v. Fortson*, 403 U.S. at 440-42.

lack of reasonably diligent effort by the parties, as well as a lack of appeal of Plaintiffs' and their candidates and platforms to the electorate in Tennessee, as evidenced by the fact that none of their presidential candidates has never achieved as much as one percent (1%) of the vote in an election.[16]

As a final argument, Plaintiffs assert that Tennessee's 2.5% signature requirement is higher than most other states and, therefore, too burdensome. However, as recognized by the Eleventh Circuit in *Libertarian Party of Florida v. Florida*, 710 F.2d 790 (11th Cir. 1983),

> any percentage or numerical requirement is "necessarily arbitrary." Once a percentage or number of signatures is established, it would probably be impossible to defend it as either compelled or least drastic. At any point, probably a fraction of a percentage point less, or a few petitioners less would not leave the interests of the state unprotected. Any numerical requirement could be challenged and judicially reduced, and then again, and again until it did not exist at all. This is not the thrust of the Court's teachings, however. Rather, a court must determine whether the challenged laws "freeze" the status quo by effectively barring all candidates other than those of the major parties and provide a realistic means of ballot access. *The focal point of this inquiry is whether a "reasonably diligent [party] [can] be expected to satisfy the signature requirements."* (emphasis added).[17]

Here, the undisputed evidence is that the Plaintiffs have not been reasonably diligent in their attempts to satisfy the signature requirement. Only one of the Plaintiffs – the CPT – has ever even attempted to satisfy the requirement, and in that instance, after collecting over 9,000

---

[16] *See* Exhibit L to Defendants' Motion for Summary Judgment, Response No. 5. *See also Munro v. Socialist Workers Party*, 479 U.S. 189, 198 (1986) ("States are not burdened with a constitutional imperative to reduce voter apathy or to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot.").

[17] *Id.* at 793 (internal citations omitted).

signatures in two months, they simply stopped even though the filing deadline was over five months away.[18]

While Plaintiffs do not dispute that the LPT and GPT have made no attempt to obtain recognition as a statewide political party through the petition process, they do dispute that the CPT has only made one attempt – relying upon their expert's report.[19] It should be noted, however, that Plaintiffs have presented Mr. Winger as an expert witness and not as a fact witness. The fact witness in this case is Plaintiff Joan Castle, who responded to the Defendants' discovery requests and testified on behalf of the CPT. As such, Plaintiffs are simply trying to create a genuine issue of material fact based upon a discrepancy in their own expert's opinion testimony and the factual testimony of Plaintiffs Ms. Castle and the CPT.

Specifically, Ms. Castle testified that she and her husband, Darrell Castle established the Constitution Party in Tennessee in 1992 and has been a member of the party since that time. Ms. Castle further testified that her husband had served as chair of the party from 1992 to 2000. In 2000, Ms. Castle was appointed by her husband to serve as chair and she served until March 2008 when she left to work on her husband's political campaign.[20]

In response to discovery requests asking that the CPT identify "each instance prior to the 2008 election year, where the Constitution Party has taken action to obtain recognition as a statewide political party," including identification of the date, action taken and results, Ms. Castle only identified one instance – the period of August 2001 to November 2001.[21] Moreover, given that Ms. Castle helped establish the CPT with her husband and either she or her husband

---

[18] *See* Exhibit C; Exhibit F, Castle Deposition at pp. 43, 64-66; and Exhibit G, Response Nos. 7 and 11 to Defendants' Motion for Summary Judgment.

[19] *See* Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts No. 39.

[20] See Exhibit A to Defendants' Reply, Deposition of Joan Castle at pp. 8-10, 16.

[21] *See* Exhibit G, Response Nos. 6, 7, 10 and 11 to Defendants' Motion for Summary Judgment.

10

served as chair of the CPT from its inception through 2008, presumably Ms. Castle would be aware of any other petition attempts conducted by the CPT. Ms. Castle did not, however, identify any attempt other than the one in 2001.[22] Defendants have relied upon this factual testimony and sworn discovery responses of Plaintiffs Ms. Castle and the CPT and any discrepancy in this evidence from Mr. Winger's expert report is simply not enough to create a genuine issue of material fact.[23]

In conclusion, the Supreme Court has recognized that "[a] new party organization contemplates a statewide, ongoing organization with distinctive political character. Its goal is typically to gain control of the machinery of state government by electing its candidates to public office."[24] Accordingly, a state has a correspondingly greater interest in imposing restrictions on new political party recognition to provide "assurance that the particular party designation has some meaning."[25] Based upon the undisputed evidence in the record, Plaintiffs have failed to demonstrate that Tennessee's 2.5% signature requirement – either standing alone or in conjunction with the "membership" requirement and the filing deadline – has unreasonably encroached upon their First Amendment rights.

---

[22] Not only did Ms. Castle not identify any other attempts in her initial responses to Defendants' discovery requests, but she also did not identify any additional attempts in her supplemental responses filed in January 2010 – even though at that time Plaintiffs had already produced their expert's report asserting that the CPT had conducted additional petition attempts in 1999-2000 and in 2003-2004. *See* Exhibit B to Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment.

[23] Additionally, it should be noted that while Mr. Winger states in his expert report that the CPT attempted to obtain signatures in 1999-2000 and 2003-2004, he provides no further information about these petition attempts, i.e., how much time was spent, how many signatures were gathered, etc. Accordingly, Defendants would submit that, even if this testimony were to be considered competent, it still does nothing to demonstrate that the CPT was "reasonably diligent" in its petition attempts.

[24] *Storer v. Brown*, 415 U.S. 724, 745 (1974).

[25] *Libertarian Party v. Florida*, 710 F.2d at 795.

11

## CONCLUSION

For these reasons, Defendants respectfully request that this Court enter summary judgment in their favor upholding the constitutionality of Tennessee's statute governing the procedures for an organization to obtain recognition as a statewide political party.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General and Reporter


/s/ Janet M. Kleinfelter
JANET M. KLEINFELTER (BPR 13889)
Deputy Attorney General
Public Interest Division
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
Janet.kleinfelter@ag.tn.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on the __1st__ day of March 2010, that a copy of the above document has been served upon the following persons by:

__X__                                            Electronic Case Filing (ECF) System to:

JAMES C. LINGER (OBA #5441)
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797
bostonbarristers@tulsacoxmail.com


DARRELL L. CASTLE (BPR 6863)
3100 Walnut Grove, Suite 610
Memphis, TN 38111
(901) 327-2100
Dlc2586@aol.com


                                            /s/ Janet M. Kleinfelter
                                            JANET M. KLEINFELTER

13